**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

TAN DUC NGUYEN,
    *Defendant-Appellant.*

No. 11-50061

D.C. No.
8:08-cr-00251-
DOC-1

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
January 12, 2012—Pasadena, California

Filed March 23, 2012

Before: Stephen Reinhardt and William A. Fletcher,
Circuit Judges, and Jack Zouhary, District Judge.*

Opinion by Judge Reinhardt

---

*The Honorable Jack Zouhary, District Judge for the U.S. District Court
for Northern Ohio, sitting by designation.

---

**COUNSEL**

H. Dean Stewart, San Clemente, California, for the appellant.

Erin H. Flynn (argued), DOJ Atty, Washington, DC, Jessica Dunsay Silver, DOJ Atty, Washington, DC, Thomas E. Perez, Assistant Attorney General, Washington, DC, for the appellee.

---

**OPINION**

REINHARDT, Circuit Judge:

Tan Nguyen was convicted in federal court on one count of obstruction of justice, 18 U.S.C. § 1512(b)(3), for failing to disclose the full extent of his knowledge regarding the mailing of a letter that could reasonably be believed to constitute an attempt at voter intimidation. The evidence produced against Nguyen during his federal prosecution was obtained pursuant to a search warrant issued in the course of a state investigation into the possible violation of a state statute in relation to the mailing of a Spanish-language letter by Nguyen, then the Republican candidate for a seat in the U.S. House of Representatives, to foreign-born registered voters with Hispanic surnames who were registered Democrats or "decline to states." Nguyen contends that there was insufficient probable cause to support the issuance of the warrant and that, therefore, the evidence obtained pursuant to it should have been suppressed at his federal trial. We review the district court's denial of Nguyen's motion to suppress, and affirm.

**Background**

Beginning on October 11, 2006, Mailing Pros, Inc., a mass mailing service, mailed approximately 14,000 letters, on behalf of a customer known as "Mark Lam," to individuals on a mailing list comprised of "newly registered voters with Hispanic surnames . . . who were born outside of the United States" and who had registered as Democrats or "decline to states." The letter was written in Spanish and, among other things, advised recipients that "there is no incentive for voting in this country." They were informed that if they voted in the upcoming election in November their personal information would be collected by a newly implemented government computer system, and that organizations that were "against immigration" might request information from this system. The letter also encouraged citizens to "participate in the democratic process of voting," but warned those who "are in this country illegally or [are] legal resident[s]" that "voting in a federal election is a crime" that could result in incarceration and deportation. The California Attorney General's office began an investigation into its source after receiving complaints regarding this letter from some of its recipients. This investigation ultimately led agents to Tan Nguyen, the Republican candidate for United States Congress in the 47th District of California. Nguyen was running against the Democratic incumbent, Loretta Sanchez, a Latina who had strong support in the Hispanic community.

Agents of the California Attorney General's office interviewed Nguyen with his attorney on October 19, 2006. During this meeting Nguyen admitted to having limited knowledge of the letter prior to its mailing, but stated that he believed that it was created and distributed by an acquaintance, Mark Nguyen, also known as "Mark Lam," and sent independently from the campaign. Shannon Williams, the agent in charge of the investigation, disbelieved Nguyen's account of the letter and sought a warrant to search Nguyen's home and campaign headquarters. In the affidavit supporting

the warrant, Williams stated that "there existed a conspiracy or agreement between [ ] Nguyen, Mark Nguyen and perhaps other [sic] to draft, produce and mail out letters to the targeted Orange County voters to benefit [ ] Nguyen's Congressional campaign by discouraging a discreet [sic] and perceived vulnerable set of potential voters who would be expected to favor his Democratic opponent in the upcoming election." The affidavit included a number of facts that had been discovered in the course of the investigation that linked Nguyen and his campaign to the letter. Included among them was a statement from the proprietor of Mailing Pros, who received a call from Nguyen asking the company to expedite the mailing job for customer Mark Lam. The affidavit also included a statement from an employee of the company that provided the targeted mailing list used, informing agents that the list had been requested directly by Nguyen. The affidavit also noted that the agent had been advised by attorneys within the Attorney General's office that the letter "could constitute a violation of [California] Election Code sections 18540, use of threats to influence voting, 18502, interference with an election, and 18543, challenging a person's right to vote." Attached to the affidavit was a copy of an email exchange from September 2006 produced by Nguyen in which he discussed the contents of the letter with campaign supporter Roger Rudman and an English-language translation of the letter received by the targeted voters.

The state court magistrate issued a warrant to search for evidence related to the mailing of the letter. After a search of Nguyen's home and campaign headquarters, the latter conveniently coinciding with a press conference held by Nguyen state agents seized documents and computers, and found emails showing greater involvement by the defendant in the drafting and mailing of the letter than he had previously acknowledged. No charges were ultimately filed regarding the mailing of the letter or any other violations of state law, and the State Attorney General, Bill Lockyer, issued a press

release in May 2007 informing the public that the state did not intend to file charges.

In October 2007, a year after the election took place and Nguyen lost his bid to unseat Sanchez, a federal investigation was officially opened. The federal agents did not uncover any new information or evidence related to the sending of the letter, and no charges of a violation of any federal election law were filed against Nguyen or any of his associates; however, Nguyen was charged with obstruction of justice, 18 U.S.C. § 1512(b)(3), for the failure to disclose to state agents the full extent of his knowledge regarding the creation and mailing of the letter at issue. The government alleged that Nguyen's failure to disclose information to state agents provided a basis for his federal prosecution. Although there was no federal investigation pending at the time Nguyen was questioned, the government argued that "there didn't have to be a federal investigation . . . all that matters is that the defendant tried to hinder or prevent information from getting to sources that may ultimately turn out to be a federal investigation [for voter intimidation under federal law]." According to the government, Nguyen's intent was "for the State to receive [no information] so that they could give nothing to the federal investigators."

On appeal, Nguyen does not challenge the basis of his federal indictment, but solely the constitutionality of the warrant that was issued by the state magistrate in connection with the state investigation. Prior to trial, Nguyen moved to suppress the evidence obtained as a result of the search on the ground that the warrant was not supported by probable cause to believe that a crime had been committed. The district court denied his motion and he was convicted by a jury of making statements with the intent to hinder or delay a federal investigation, and ultimately sentenced to twelve months and one day in prison. We consider here only the one narrow question presented by Nguyen: Was there probable cause for the state

magistrate to believe that a crime had been committed and that the search was likely to reveal evidence of that crime.[1]

## DISCUSSION

### I.

A court evaluating the constitutionality of a search conducted pursuant to a search warrant issued by a magistrate reviews the magistrate's probable cause determination for clear error. *United States v. Celestine*, 324 F.3d 1095, 1100 (9th Cir. 2003). When a district court denies a motion to suppress based on its conclusion that the warrant was supported by probable cause, we review the denial *de novo*. *United States v. Meek*, 366 F.3d 705, 711 (9th Cir. 2004).

### II.

We must conclude that a warrant has been validly issued if there is a substantial basis for the magistrate's conclusion that "given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). For a finding of probable cause to satisfy this nexus requirement, there must be a fair probability both that a crime has been committed and that evidence of its commission will be found in the location to be searched. *United States v. Hill*, 459 F.3d 966, 970-72 (9th Cir. 2006); *United States v. Rubio*, 727 F.2d 786, 793-95 (9th Cir. 1983). In this case, Nguyen does not claim that the magistrate lacked a sufficient basis to conclude that evidence pertaining to the creation and mailing of the letter could be found at his

---

[1]In confining our analysis to this question, we express no opinion as to whether the basis of Nguyen's conviction — his failure to disclose information regarding the mailing of the letter to a state investigator during the course of the state investigation — would satisfy the elements of 18 U.S.C. § 1512(b)(3).

home and campaign headquarters. Instead, Nguyen relies solely on the first, and equally important, element of the nexus requirement that requires that a warrant be supported by a "fair probability" that a crime has been committed. He argues that the mailing of the letter did not amount to a violation of any law, and, consequently, could not provide a substantial basis for concluding that there was probable cause to believe that a crime had been committed.

In Agent Williams's affidavit she did not contend that any act other than the sending of the letter amounted to a violation of any law. In the application for a search warrant, Williams sought no more than evidence that would connect Nguyen to the mailing of the letter, and did not suggest that evidence of further criminal activity could be found in the locations to be searched. The warrant itself related only to the letter and provided the agents with the authority to search for evidence related to the mailing of a letter "advising the addressee that it is illegal for a resident illegally in the country to vote." The distribution of the letter is therefore the only act alleged to have constituted a crime, and the probable cause determination must therefore be based on the purported illegality of this letter. If the letter combined with the circumstances of its mailing as described to the magistrate clearly did not amount to a violation of the law, then there was no probable cause, and the warrant was invalid. *See Rubio*, 727 F.2d at 793 (holding that the warrant was invalid because it did not tend to establish that the basis for the warrant — membership in Hell's Angels Motorcycle Club — was an illegal activity); *see also Mink v. Knox*, 613 F.3d 995, 1003-10 (10th Cir. 2010) (recognizing that a warrant was invalidly issued when there was no probable cause to believe that the challenged publication violated the state criminal libel statute).

**[1]** A probable cause determination is valid only if there is a fair probability that a crime has been committed. This "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *New York v.*

*P.J. Video, Inc.*, 475 U.S. 868, 877-78 (1986) (quoting *Gates*, 462 U.S. at 244 n.13). Conversely, if the facts alleged in an affidavit cannot support the conclusion that there is a fair probability that a law has been violated, this standard is not met and there is no probable cause to support the issuance of the warrant. In the affidavit attesting that the letter constituted a violation of California law, Agent Williams listed three provisions that she believed the letter "could" have violated: California Election Code Sections 18502, 18543, and 18540.[2] All three of these statutory provisions criminalize acts that prevent individuals from voting through misleading or coercive acts.

Section 18502 criminalizes interference with "officers holding an election or conducting a canvass, or with the voters lawfully exercising their rights of voting at an election." Cal. Elec. Code § 18502. The language of this section renders it applicable only at the time of an election. The mailing of a letter weeks prior to an election could not have interfered either with officers holding an election or with voters exercising their rights at an election. Consequently, the mailing of the letter could not have constituted a violation of this statute, and thus could not provide probable cause for the issuance of the warrant.

Section 18543 makes it a felony to conspire to "fraudulently advise[ ] any person that he or she is not eligible to vote . . . when in fact that person is eligible." Cal. Elec. Code § 18543. The plain language of the statute criminalizes advising *eligible* voters that they are not eligible to vote. Only United States citizens are eligible to vote. Cal. Const. Art. 2 § 2. The letter expressly states that "[i]f you are a citizen of

---

[2]While it is possible that a warrant can be held to be valid when an affidavit provides probable cause that a law other than the statute specified in the affidavit has been violated, *Meek*, 366 F.3d at 713, the government does not contend that the magistrate could have determined that there was probable cause to believe that any other statute had been violated.

the United States, you are kindly asked to participate in the democratic process of voting." It goes on to state that those illegally in the country or "legal residents" cannot legally vote and may be subject to incarceration and deportation. Because only U.S. citizens may vote, the letter does not "fraudulently advise" any eligible voter that he or she is ineligible to vote, as required to violate section 18543. There is therefore no basis for concluding that the letter violated section 18543, and correspondingly, no basis for concluding that there is a fair probability that the facts alleged in the affidavit constituted a violation of this statute.

**[2]** Section 18540 makes it a felony to use any "tactic of coercion or intimidation, to induce or compel any other person to refrain . . . from voting." Cal. Elec. Code § 18540(a). In *Hardeman v. Thomas*, 208 Cal. App. 3d 153 (1989), the California Court of Appeal held that "the type of intimidation envisioned by section [18540]" is not limited to displays or applications of force, but can be achieved through manipulation and suggestion. *Id.* at 170; *see also Stebbins v. White*, 190 Cal. App. 3d 769, 788 (1987). Thus, an individual may violate section 18540 through subtle, rather than forcefully coercive means, although this intimidation must be intentional.[3] In this case, the letter presented to the magistrate warned recipients that if they voted in the upcoming election their personal information would be collected by a "new computer system," and that this information could be provided to organizations who are "against immigration." According to the information supplied in the affidavit, this letter was sent to individuals identified as targets for the mailing due in part to their status as foreign-born individuals with Hispanic surnames — that is, those believed to be Latino immigrants. The affidavit also

---

[3]The statute punishes an individual who uses any of a number of various means "*to* induce or compel" an individual to vote or refrain from voting, not merely those who engage in actions that may have the ultimate effect of affecting an individual's decision to vote. Cal. Elec. Code § 18540 (emphasis added).

informed the magistrate that the letter was mailed by individuals associated with a Republican congressional candidate, and was sent specifically to voters who registered as Democrats or declined to state their party affiliation. In other words, the intended recipients of the letter mailed by Nguyen's campaign were not registered Republicans, but rather individuals who, as the affidavit stated, "would be expected to favor [Nguyen's] Democratic opponent in the upcoming election."

**[3]** Although the trier of fact is the ultimate judge of whether the letter constituted an attempt to intimidate voters, *Hardeman*, 208 Cal.App. 3d. at 170, we hold that the contents of the letter and the circumstances of its distribution were sufficient to allow the magistrate to conclude that there was a fair probability that the mailing constituted a violation of California Election Code Section 18540. The letter targeted immigrant voters with threats that their personal information would be provided to anti-immigration groups if they exercised their right to vote, and was mailed by a campaign with a vested interest in inducing these voters — members of the competing political party and of a minority group supporting the opposing candidate — not to vote in the upcoming election. These facts created a fair probability that the distribution of the letter constituted an act of voter intimidation under California law, and provided a sufficient basis for the issuance of the warrant.

**[4]** Despite the fair probability that the mailing of the letter violated California law, Nguyen was never charged with violating any provision of the California Election Code. Upon further investigation, the state may have determined that Nguyen lacked the necessary *scienter* to violate the statute in question or that he was not sufficiently involved with the letter's creation and mailing to justify prosecution. Even if the state believed that Nguyen's conduct did satisfy the elements of the statute, the Attorney General's office may have had any number of reasons for electing not to prosecute the former candidate, including its exercise of prosecutorial discretion. The absence of a state prosecution does not signify that

Nguyen's conduct did not amount to a violation of the law. Regardless of the ultimate decision made not to charge Nguyen with a state offense, the contents of the affidavit provided a substantial basis for the magistrate to conclude that there was a fair probability that the mailing of the letter to the targeted population constituted a tactic of coercion intended to induce its recipients to refrain from voting. There was therefore sufficient probable cause to support the issuance of the warrant to search Nguyen's home and campaign headquarters.

## III.

**[5]** Nguyen also argues that his letter was political speech, thus entitling it to First Amendment protection. California Election Code Section 18540 prohibits the intentional intimidation of voters. This court has recognized that laws preventing intentional intimidation, as "applied to speech whose communicative impact causes the relevant harm," are properly treated as content-based restrictions on speech. *United States v. Cassel*, 408 F.3d 622, 626 (9th Cir. 2005). The Supreme Court in *Virginia v. Black*, 538 U.S. 343, 360 (2003), has held that "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat." As such, it may be regulated by the state without running afoul of the First Amendment. *See United States v. McLeod*, 385 F.2d 734, 740 (5th Cir. 1967) (recognizing that otherwise lawful activities may be punishable under federal laws against voting intimidation "if they have the proscribed effect and purpose"); *see also Olagues v. Russoniello*, 797 F.2d 1511, 1522 (9th Cir. 1986) (en banc) (recognizing that federal law prohibits the intentional intimidation of persons voting or aiding someone else to vote), *vacated as moot by Russoniello v. Olagues*, 484 U.S. 806 (1987).

**[6]** California's prohibition on intentional acts of voter intimidation is therefore consistent with the state's power to regulate true threats. If the targeted distribution of the letter

by Nguyen's campaign falls within this prohibition, then it is speech that is proscribable under the First Amendment. To justify the issuance of a warrant, however, there need be only a fair probability that a violation has occurred. As already discussed, the contents of the letter and the targeting of the specific class of voters meets this requirement. The warrant was therefore properly issued.

## Conclusion

Although Nguyen was never prosecuted for a violation of the election laws, in light of the contents of the letter and the facts surrounding its distribution, there was a fair probability that the campaign mailing constituted a tactic of intimidation intended to induce its recipients to refrain from voting. Cal. Elec. Code § 18540. The order of the district court denying Nguyen's motion to suppress is AFFIRMED.