NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 30 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-2532 |
| Plaintiff - Appellee, | D.C. No. 2:22-cr-00087-JLR-1 |
| v. | |
| CHRISTOPHER SCOTT CRAWFORD, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted February 10, 2025
Seattle, Washington

Before: W. FLETCHER and NGUYEN, Circuit Judges, and BENNETT, District Judge.**

Christopher Scott Crawford was convicted by a jury for cyberstalking his ex-wife, *see* 18 U.S.C. § 2261A(2)(B), and making threats by interstate communications, *see* 18 U.S.C. § 875(c). He appeals the conviction as well as a

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

condition of his sentence limiting his access to firearms. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The cyberstalking statute, 18 U.S.C. § 2261A(2), does not violate the First Amendment for facial overbreadth or vagueness. A constitutional challenge to a statute is reviewed de novo, even if unpreserved. *See United States v. Naghani*, 361 F.3d 1255, 1259 (9th Cir. 2004).

We have already held that the cyberstalking statute is not facially overbroad. *See United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014).[1] "'Because the statute requires both malicious intent on the part of the defendant and substantial harm to the victim, it is difficult to imagine what constitutionally-protected speech would fall under these statutory prohibitions.'" *Id.* at 944 (quoting *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012) (cleaned up)).

The Supreme Court's ruling in *Counterman v. Colorado*, 600 U.S. 66 (2023), does not require us to overrule *Osinger*. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003). While *Osinger* discusses vagueness and overbreadth of the cyberstalking statute, *see* 753 F.3d at 943–45, *Counterman* instructs that if a defendant is being prosecuted for threatening speech, "the First Amendment still

---

[1] The statute has since been amended, but the changes made do not disrupt the analysis in *Osinger*. *See* Pub.L. 115-334, Title XII, § 12502(a)(1), Dec. 20, 2018, 132 Stat. 4982; *see also* Pub.L. 116-249, § 2(c), Dec. 22, 2020, 134 Stat. 1126 (not amending § 2261A).

requires proof that the defendant had some subjective understanding of the threatening nature of his statements" and that the minimum mens rea for this subjective intent is recklessness, 600 U.S. at 69. The cyberstalking statute at issue here and in *Osinger* criminalizes conduct or speech that is harassing or intimidating. That conduct or speech need not involve true threats. *See, e.g.*, *Osinger*, 753 F.3d at 947 (finding the nonconsensual dissemination of nude photos to be "'integral to criminal conduct' in intentionally harassing, intimidating or causing substantial emotional distress"). Accordingly, *Counterman* is not clearly irreconcilable with *Osinger*.

Further, the limiting instruction provided by *Counterman*—namely, that a person cannot be prosecuted for making a threat unless he has a subjective intent— eliminates Crawford's void-for-vagueness challenge. *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (rejecting a vagueness challenge to a statute that "neither requires specific intent nor defines true threats" because "the narrowing construction provided by the relevant cases actually alleviates possible void-for-vagueness concerns").

2. Crawford's four challenges to the jury instructions fail. "We review the district court's 'precise formulation' of jury instructions for abuse of discretion," *United States v. Smith*, 831 F.3d 1207, 1214 (9th Cir. 2016) (quoting *United States v. Lloyd*, 807 F.3d 1128, 1165 (9th Cir. 2015)), and "whether the jury instructions

misstated an element of the crime de novo," *United States v. Kirst*, 54 F.4th 610, 624 (9th Cir. 2022) (cleaned up). But if the defendant failed to object to a jury instruction below, we review for plain error. *United States v. Jaimez*, 45 F.4th 1118, 1122 (9th Cir. 2022).

A. The parties dispute which standard of review applies to Crawford's first jury instruction challenge—that the cyberstalking instruction improperly defined the mens rea components of a true threat—but under any standard, his claim fails. The instruction captures an objective component of a true threat, not just the subjective component mandated by *Counterman*. *See United States v. Ehmer*, 87 F.4th 1073, 1121 (9th Cir. 2023) (affirming "the district court correctly included *both* [subjective and objective] elements" of a true threat (emphasis in original)). Additionally, the instruction's subjective component meets the requirements of *Counterman*, explaining that "harass" means "to act with the specific intent or purpose of distressing the victim by threatening." To find an intent to threaten necessarily requires that "the defendant had some understanding of his statements' threatening character." *Counterman*, 600 U.S. at 73; *see also Ehmer*, 87 F.4th at 1119 (a post-*Counterman* case affirming a substantially similar instruction that "the speaker or actor must intend his or her words or conduct to intimidate or to be a threat").

B. Crawford is also incorrect that the cyberstalking instruction was

defective for defining a true threat as "a serious statement expressing an intention to inflict injury," rather than "a serious expression of an intent to commit an act of unlawful violence." *See Virginia v. Black*, 538 U.S. 343, 359 (2003). True threats can include "an expression of an intention to inflict evil, injury, or damage on another." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1075 (9th Cir. 2002) (en banc) (cleaned up). True threats can exist where no violence is involved, *see United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1266 (9th Cir. 2012), and where the subject of injury is not a person, *see United States v. Cassel*, 408 F.3d 622, 636 (9th Cir. 2005). Because Crawford's proposed definition was legally incomplete, the district court did not abuse its discretion in refusing it.

C. Crawford's third and fourth challenges bring the same arguments against the district court's instruction for an interstate threat, and his challenges fail for the same reasons.

3. Crawford's evidentiary challenges also fail. The district court did not abuse its discretion in admitting evidence that Crawford disseminated nude photos of his ex-wife without consent. Because the cyberstalking statute covers more than true threats, the communications and photos were relevant to the charge, even if they were not threatening. For the same reason, Crawford's argument that the evidence was prejudicial because the jury was given no guidance on how to

determine if the evidence constituted a true threat is unpersuasive. Evidence of Crawford's dissemination of her photographs and his intense anger towards her is relevant to show that his conduct was harassing and that he had an intent to harass. *See Osinger*, 753 F.3d at 947. And contrary to Crawford's assertion, the nonconsensual dissemination of another's sexually explicit photographs falls outside the protection of the First Amendment. *Id.* at 948 ("Osinger's speech is not afforded First Amendment protection for the additional reason that it involved sexually explicit publications concerning a private individual.").

The district court did not plainly err in admitting evidence of the threats Crawford made to his ex-wife's coworkers. The messages detailed his intent to disseminate the explicit photographs and illustrated the depth of his anger. The conduct need not be limited to acts directly against the victim under the cyberstalking statute. *Id.* at 947 (finding nude photographs and threats sent to the victim's friends, coworkers, and family to be harassment under § 2261A).

Finally, any prosecutorial misconduct or error in admitting evidence that Crawford violated a protection order and allowing testimony about the Navy's historic failure to protect servicewomen from violence, was harmless given the strength of other evidence showing Crawford's extensive harassment.

4. Crawford's condition of supervised release—prohibiting him from owning, possessing, or having access to a firearm, ammunition, destructive device,

or dangerous weapon—does not violate the Second Amendment. Crawford's "temporary disarmament is consistent with our nation's historical tradition of firearm regulation." *United States v. Perez-Garcia*, 96 F.4th 1166, 1171 (9th Cir. 2024); *see also New York State Rifle & Pistol Association Inc. v. Bruen*, 597 U.S. 1, 24 (2022). First, "our society has traditionally subjected criminal defendants to temporary restrictions on their liberty—including restrictions that affect their ability to keep and bear arms—to protect public safety." *Id.* at 1182. Second, because "supervised release is part of a defendant's sentence," that period, "like imprisonment, restricts a defendant's liberty and fundamental rights." *United States v. Weber*, 451 F.3d 552, 559 (9th Cir. 2006) (citations omitted). And third, restrictions on "the possession of firearms by 'felons . . . ,' are 'presumptively lawful.'" *United States v. Rahimi*, 602 U.S. 680, 626, 627 n.26 (2024) (quoting *D.C. v. Heller*, 554 U.S. 570, 627, n.26 (2008)).

    **AFFIRMED.**