**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 09-50408 |
| v. | D.C. No. 3:08-cr-03418-JM-1 |
| RAMIRO RAMOS-MEDINA, *Defendant-Appellant*. | ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, Senior District Judge, Presiding

Argued and Submitted
March 8, 2012—Pasadena, California

Filed June 21, 2012
Amended January 11, 2013

Before: Jerome Farris, Richard R. Clifton,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Criminal Law

The panel amended a June 21, 2012, opinion and denied a petition for panel rehearing, and the court denied a petition for rehearing en banc, in a case in which the panel affirmed a conviction and sentence for illegally re-entering the United States after previously having been deported.

In the amended opinion, the panel held that *United States v. Becker*, 919 F.2d 568 (9th Cir. 1990), and *Lopez-Cardona v. Holder*, 662 F.3d 1110 (9th Cir. 2011), establish that first-degree burglary under Calif. Penal Code § 459 is categorically a crime of violence and thus an "aggravated felony" for purposes of the Immigration and Nationality Act. The panel therefore affirmed the conviction, rejecting the defendant's challenge to the validity of immigration authorities' decision to deport him via the expedited administrative removal procedure and their determination that he was not eligible for discretionary relief.

Affirming the crime-of-violence enhancement of the defendant's sentence pursuant to U.S.S.G. § 2L1.2(b)(1)(A) based on his § 459 conviction, the panel applied the modified categorical approach and concluded that the defendant was convicted of all the elements of generic burglary.

The panel also held that the district court did not err in denying the defendant a two-level downward adjustment for

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

acceptance of responsibility under U.S.S.G. § 3E1.1(a). The panel distinguished the district court's denial of the adjustment here from cases in which district courts interpreted the Sentencing Guidelines to forbid the award of such an adjustment to any defendant who forces the government to prove his guilt at trial.

## COUNSEL

Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, California, for Appellant.

Laura E. Duffy, Bruce E. Castetter, Charlotte E. Kaiser (argued), United States Attorney's Office, San Diego, California, for Appellee.

Sean Riordan, San Diego, California, for Amicus Curiae ACLU of San Diego and Imperial Counties.

## ORDER

This court's opinion, filed June 21, 2012, is amended by inserting the words "first-degree" before "burglary" in the following places: on page 7304 of the slip opinion, in the second sentence of the first paragraph; on page 7305, in the third sentence of the second full paragraph; on page 7306, in the first sentence under the heading "A. Ramos's Prior Deportation;"on page 7307, in the first sentence of the first full paragraph and in the first and second sentences of the last (partial) paragraph; on page 7308, in the first full sentence on the page and the last sentence of the first full paragraph; on page 7309, in the first sentence on the page (where the words

"The petitioner in" should not be italicized); on page 7310, in the first and second sentences of the first full paragraph; and on page 7312, in the first full sentence on the page (excluding the *Taylor* citation), beginning with the words "As described above".

The opinion is also amended by inserting "first-degree" before "California" in the penultimate sentence in the first partial paragraph on page 7308, by inserting "for first-degree burglary" before "under § 459"in the last full sentence on page 7309, and by inserting "as defined by California Penal Code § 459" before "involves" in the last sentence (excluding the *Id.* citation) of the first full paragraph on page 7310.

The opinion is amended by the addition of the following new sentence at the end of footnote 2 on page 7306: <If the burglar enters "an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, or trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building," the burglary is "burglary of the first degree." Cal. Penal Code § 460.>

Finally, the opinion is amended by replacing the last two paragraphs, on pages 7316–17, with the following paragraph:

> In this case, the district court did not make the same mistake of law. It noted the fact that "this case went to a full blown jury trial," but it based its final decision on "the facts of this case and on this particular record" as a whole. This was the correct analytical

approach. *See Cortes*, 299 F.3d at 1038.[4] The district court's ultimate decision that Petitioner had not adequately accepted responsibility was not clearly erroneous. "[A] defendant who . . . frivolously contests[] relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.1(A). Ramos contested the fact and validity of his deportation at trial. The district court asked Ramos's counsel not to pursue this line of argument any further because it "r[an] afoul of the in-limine motion order with respect to the deportation order" and was not supported by any "offer of proof." In addition, Ramos disputed during trial and in a motion for judgment of acquittal that he ever re-entered the United States. The court denied the motion, holding that "[t]he evidence is rather overwhelming that . . . the defendant was detected and detained" in the United States. On this record, the district court did not clearly err in finding that Ramos's actions were inconsistent with acceptance of responsibility. Accordingly, we affirm Ramos's sentence.

Footnote 4 within that paragraph, following the citation "*See Cortes*, 299 F.3d at 1038." is as follows:

Under this approach, a district court may deny the reduction after "balanc[ing] all the relevant factors," *Cortes*, 299 F.3d at 1039, but—in doing so—it "may not consider

against the defendant any constitutionally protected conduct." *United States v. Sitton*, 968 F.2d 947, 962 (9th Cir. 1992) (quoting *United States v. Watt*, 910 F.2d 587, 592 (9th Cir. 1990)).

With the opinion as amended, the Appellant's petition for panel rehearing and petition for rehearing en banc, filed August 6, 2012, is denied. The full court has been advised of the petition for rehearing and rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. *See* Fed R. App. P. 35; 9th Cir. R. 35-1 & advisory committee note 2. No subsequent petitions for rehearing, rehearing en banc, or rehearing before the full court may be filed.

## OPINION

CLIFTON, Circuit Judge:

Ramiro Ramos-Medina appeals from his conviction and sentence for illegally re-entering the United States after previously having been deported. We conclude that Ramos's prior conviction for first-degree burglary under California Penal Code § 459 qualified as a crime of violence under the immigration laws and for sentencing purposes. We also hold that the district court did not err in denying Ramos a two-level downward adjustment for acceptance of responsibility under Sentencing Guidelines § 3E1.1(a). We distinguish the district court's denial of an acceptance of responsibility adjustment here from cases in which district courts interpreted the Guidelines to forbid the award of such an adjustment to any defendant who forces the government to

prove his guilt at trial.  *See United States v. Cortes*, 299 F.3d 1030, 1038 (9th Cir. 2002); *United States v. Ochoa-Gaytan*, 265 F.3d 837, 842–43 (9th Cir. 2001).  We affirm.

## I.  Background

In 2007, Ramos pled guilty to a charge of first-degree residential burglary under California Penal Code § 459.  The court sentenced him to two years in prison.

Immigration officers determined that Ramos's conviction qualified as a "crime of violence" under 8 U.S.C. § 16(b) and was thus an "aggravated felony" under the Immigration and Nationality Act ("INA"),  8 U.S.C. §§ 1101(a)(43)(F); 1227(a)(2)(A)(iii).  They explained to Ramos that this meant he could be removed to Mexico under an administrative order without appearing before an Immigration Judge.  *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1228(b).  They also explained to Ramos that this procedure made him ineligible for discretionary relief from removal.  *See* 8 U.S.C. § 1228(b)(5).  Ramos signed a form acknowledging that he did not wish to contest his deportation and did not wish to seek withholding of removal.  A Final Administrative Removal Order was issued, and Ramos was taken to the Mexican border and released.

Five days later, Border Patrol agents apprehended Ramos on the United States side of the border.  Ramos admitted that he had illegally crossed back into the United States.  He was charged with violating 8 U.S.C. § 1326, which makes it a crime for any alien who has been deported to re-enter the United States without permission.

Ramos moved to dismiss the indictment. He argued that his California burglary conviction did not qualify as a conviction for an aggravated felony and that it had therefore been improper for the immigration authorities to deport him via the expedited administrative process and to tell him that he was not eligible for discretionary relief. The district court held that his conviction for first-degree burglary under California law did qualify as an aggravated felony and denied Ramos's motion. Ramos was tried before a jury and convicted.

The district court calculated the Sentencing Guidelines range. It determined that a base offense level of eight applied to Ramos's conviction. It applied a 16-level enhancement under Guidelines § 2L1.2(b)(1)(A) because it determined that Ramos's prior burglary conviction qualified as a "crime of violence." The district court considered but rejected a two-level downward adjustment for acceptance of responsibility. It reasoned that

> upon apprehension Mr. Ramos did admit the elements of the conviction; however, this case went to a full-blown jury trial, and, importantly, I think the defense vigorously in its examination of adverse witnesses and in its argument to the jury challenged the deportation removal element.

*See* U.S.S.G. § 3E1.1(a). Given the adjusted offense level of 24 and Ramos's criminal history level of V, the Guidelines suggested a sentence of 92 to 115 months.

The district court identified several reasons for a shorter sentence, however. One of the reasons was that "at the time

of Mr. Ramos's apprehension, he had the right instincts by essentially admitting the elements, coming to terms with his case and cooperating with the authorities, and admitting that he was a deported alien found in the United States." The district court characterized this final reason as going "generally to the acceptance of responsibility you were talking about, although not expressly acceptance of responsibility" for the purposes of the two-level downward adjustment. The district court settled on a sentence of 42 months.[1]

## II. Discussion

We review de novo the district court's denial of Ramos's motion to dismiss his indictment based on alleged defects in his deportation. *See United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001). We review de novo the district court's interpretation of the Sentencing Guidelines. *See United States v. Rosas*, 615 F.3d 1058, 1066 (9th Cir. 2010). We review for clear error the district court's finding that Ramos did not accept responsibility for his crime. *See id.*

---

[1] The district court concluded that Ramos's final sentence could be justified either as a downward departure under Guidelines § 5K2.0 or as a below-Guidelines sentence based on the district court's discretion under *United States v. Booker*, 543 U.S. 220, 245 (2005) and the factors listed in 18 U.S.C. § 3553(a).

## A. Ramos's Prior Deportation

Ramos argues that his prior conviction for first-degree burglary under California Penal Code § 459[2] did not qualify as an "aggravated felony." Ramos was removable irrespective of whether his prior conviction was for an aggravated felony because he had entered this country illegally. *See* 8 U.S.C. § 1227(a)(1)(B). The aggravated felony determination was relevant, however, because it was a prerequisite to the immigration authorities' decision to deport Ramos via the expedited administrative removal procedure and their determination that he was not eligible for discretionary relief. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1228(b), 1229c(a)(1); *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000). Ramos argues that the district court should not have allowed this tainted deportation to serve as the predicate to criminal prosecution for post-deportation re-entry under 8 U.S.C. § 1326. *See generally United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (describing what a § 1326 defendant must prove to prevail in such a collateral attack on his prior deportation).

Our decisions in *United States v. Becker*, 919 F.2d 568 (9th Cir. 1990), and *Lopez-Cardona v. Holder*, 662 F.3d 1110 (9th Cir. 2011), establish that first-degree burglary under

---

[2] That statute subjects to punishment "[e]very person who enters [various enumerated structures] . . . with intent to commit grand or petit larceny or any felony." Cal. Penal Code § 459. If the burglar enters "an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, or trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building," the burglary is "burglary of the first degree." Cal. Penal Code § 460.

California Penal Code § 459 is categorically a crime of violence and thus an "aggravated felony" for the purposes of the INA. We therefore affirm Ramos's conviction.

In *Becker*, we held that first-degree burglary under California Penal Code § 459 qualified as a "crime of violence" under the Sentencing Guidelines. 919 F.2d at 573. The defendant in *Becker* had prior convictions for first-degree burglary under California Penal Code § 459 when he was convicted of bank robbery. *Id*. at 570. The district court held that each of the prior convictions counted as a "crime of violence" and sentenced the defendant accordingly. *Id*. The Sentencing Guidelines in effect at the time defined "crime of violence" by reference to 18 U.S.C. § 16. *Id*. at 569 (citing U.S.S.G. § 4B1.2 (1988)). Subsection (b) of 18 U.S.C. § 16 provided that any offense "that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" was a "crime of violence." Accordingly, we examined whether first-degree burglary under California Penal Code § 459 by its nature involved a substantial risk of force. *Becker*, 919 F.2d at 571. We reasoned that "[a]ny time a burglar enters a dwelling with felonious or larcenous intent there is a risk that in the course of committing the crime he will encounter one of its lawful occupants, and use physical force against that occupant either to accomplish his illegal purpose or to escape apprehension." *Id*.; *see also Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004) (burglary is "[t]he classic example" of a felony that involves a substantial risk of physical force under 18 U.S.C. § 16(b)). We concluded that California first-degree burglary was a "crime of violence" under 18 U.S.C. § 16(b) and the then current Sentencing Guidelines. *Becker*, 919 F.2d at 573; *see also Park*, 649 F.3d at 1178–80.

After we decided *Becker*, the Sentencing Commission removed the reference to 18 U.S.C. § 16 from the relevant section of the Sentencing Guidelines and replaced it with the Commission's own definition of "crime of violence." *See United States v. Aguila-Montes de Oca*, 655 F.3d 915, 919 (9th Cir. 2011) (en banc) (citing U.S.S.G. § 2L1.2 cmt. n.1(B)(iii)). Under the new definition, a crime is a "crime of violence" if it is included in a categorical list of generic "crimes of violence" or is some other "offense under federal, state, or local law that has an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Since crimes that present merely a *risk* of force are not necessarily "crimes of violence" under the new definition, the revision rendered *Becker* inapplicable to sentencing for a violation of 8 U.S.C. § 1326. It did not, however, disturb *Becker*'s conclusion that first-degree burglary under § 459 qualifies as a "crime of violence" for the purposes of 18 U.S.C. § 16(b) and other statutes that incorporate 18 U.S.C. § 16(b) by reference, including the INA.

We recognized the continued vitality of *Becker* as a construction of the INA in *Lopez-Cardona*, 662 F.3d at 1112–13. The petitioner in *Lopez-Cardona*, like the defendants in *Becker*, had been convicted of first-degree burglary under § 459. *Id*. at 1111. The Immigration Judge and Board of Immigration Appeals determined that this conviction qualified as a "crime of violence" under 18 U.S.C. § 16(b), and that the petitioner was therefore ineligible for withholding of removal. *Id*. at 1112. On appeal, we considered whether our decision in *Aguila-Montes* that burglary under § 459 was not categorically a "crime of violence" under the current version of the Sentencing Guidelines overruled *Becker*'s holding that such burglary was

categorically a crime of violence under 18 U.S.C. § 16(b). *Id.* at 1112–13. We reasoned that our recognition in *Aguila-Montes* that § 459's unlawfulness requirement was different than federal generic burglary's unlawfulness requirement did not change the fact that the conduct prohibited by § 459 involved a substantial risk of force. Every violation of § 459 might not present that level of risk, but "the proper inquiry for the categorical approach is whether the conduct covered by the crime presents the requisite risk of injury 'in the ordinary case.'" *Id.* at 1112 (quoting *James v. United States*, 550 U.S. 192, 208 (2007)); *see also United States v. Park*, 649 F.3d 1175, 1179–80 (9th Cir. 2011) (holding that § 459 is categorically a "crime of violence" under Guidelines § 4B1.2(a)(2) because "the *usual* or *ordinary* first-degree burglary in California involves conduct that presents a serious risk of *physical* violence and injury to others"). Consequently, we concluded that *Becker*'s construction of 18 U.S.C. § 16(b) remained good law in the immigration context and made the petitioner ineligible for withholding of removal. *Id.*

We recently reached an identical result in *Chuen Piu Kwong v. Holder*, 671 F.3d 872, 877–78 (9th Cir. 2011). In that case, as in *Lopez-Cardona*, the petitioner argued that *Aguila-Montes* implied that a conviction for first-degree burglary under § 459 is no longer a "crime of violence" under the INA. *Id.* at 877. Again, however, we recognized that *Aguila-Montes* "did not contradict or affect *Becker*'s holding that first-degree burglary under § 459 is a crime of violence because it involves a substantial risk that physical force may be used in the course of committing the offense." *Id.* at 878 (citing *Lopez-Cardona*, 662 at 1113).

Like the defendant in *Becker* and the petitioners in *Lopez-Cardona* and *Kwong*, Ramos was convicted for first-degree burglary under California Penal Code § 459. And just as in those cases, we conclude that the conviction is a "crime of violence" under 18 U.S.C. § 16(b) because the crime of first-degree burglary as defined by California Penal Code § 459 involves a substantial risk of harm in the ordinary case. *See, e.g.*, *Park*, 649 F.3d at 1179–80.

Ramos argues that we should not consider ourselves bound by the decisions in *Lopez-Cardona* and *Kwong* because he presents a different argument than did the petitioners in those cases. In support of that proposition he cites *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."). *See also, e.g.*, *Galam v. Carmel (In re Larry's Apartment, L.L.C.)*, 249 F.3d 832, 839 (9th Cir. 2001) (holding that a question lurked in the record of a previous case because "we had no occasion to consider" it). The continuing vitality of *Becker* was not an issue that "merely lurk[ed] in the record" of *Lopez-Cardona* and *Kwong*, however. That was the central question.

We are bound by the decisions in *Lopez-Cardona* and *Kwong*. There has been no change in the relevant statutes or regulations, nor in any governing authority, notably an intervening decision of the Supreme Court.[3] Absent such a

---

[3] Both *Lopez-Cardona* and *Kwong* were decided after *Aguila-Montes* and the California decisions Ramos cites: *People v. Parson*, 187 P.3d 1, 17 (Cal. 2008); *People v. Cole*, 67 Cal. Rptr. 3d 526, 529, 540 (Cal. Ct. App. 2007); *People v. Nguyen*, 46 Cal. Rptr. 2d 840, 841, 844 (Cal. Ct.

change, only an en banc panel of our court may overrule or revise the binding precedent established by a published opinion. As we observed in *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc): "A goal of our circuit's decisions, including panel and en banc decisions, must be to preserve the consistency of circuit law. The goal is codified in procedures governing en banc review. *See* 28 U.S.C. § 46; Fed. R. App. P. 35." This panel is not free to disregard the decision of another panel of our court simply because we think the arguments have been characterized differently or more persuasively by a new litigant.

To be sure, if we were persuaded by Ramos's arguments, we could ourselves ask our court to take the subject up en banc, and that happens from time to time. *See, e.g.*, *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1205 (9th Cir. 2011) (en banc). We have not, however, been persuaded to take that course here. We affirm Ramos's conviction.

## B. Sentencing Adjustment For Aggravated Felony Conviction

Ramos's challenge to the enhancement of his sentence based on his prior conviction for a "crime of violence" requires us to apply the current Sentencing Guidelines' definition of that term. The Guidelines' Application notes define a "crime of violence" to include "burglary of a dwelling" and any other "offense under federal, state, or local law that has an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G.

---

App. 1995); *People v. Felix*, 28 Cal. Rptr. 2d 860, 867 (Cal. Ct. App. 1994); *People v. Salemme*, 3 Cal. Rptr. 2d 398, 399, 402 (Cal. Ct. App. 1992).

§ 2L1.2 cmt. n.1(B)(iii); *Aguila-Montes*, 655 F.3d at 919.  As explained in the previous section, because the residual clause of this definition focuses on the "use, attempted use, or threatened use of physical force" against a person, *Becker*'s holding regarding crimes involving a mere risk of physical force is no longer applicable.

Instead, we must look to whether Ramos's burglary conviction qualified as a "burglary of a dwelling."   The Supreme Court has held that the generic definition of burglary "ha[s] the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990).  As described above, we held in *Aguila-Montes* that a conviction for first-degree burglary under California Penal Code § 459 does not categorically fall within that definition because "California's definition of 'unlawful or unprivileged entry,' unlike the generic definition, permits a conviction for burglary of a structure open to the public and of a structure that the defendant is licensed or privileged to enter."  655 F.3d at 944. Because a conviction under California Penal Code § 459 is not categorically a "burglary of a dwelling" constituting a "crime of violence," we must therefore apply the modified categorical approach to determine whether Ramos was in fact convicted of all the elements of generic burglary.  *See id*. at 945–46.  We conclude that he was.  We therefore affirm the district court's application of the crime of violence sentence enhancement.

The modified categorical approach "'permit[s] the sentencing court to go beyond the mere fact of conviction'" and look at the judicial records of the defendant's prior conviction.  *Id*. at 920 (quoting *Taylor*, 495 U.S. at 602).

When a defendant is convicted in conjunction with a guilty plea, the sentencing court may look to "the statement of factual basis for the charge . . . shown by a transcript of plea colloquy or by written plea agreement presented to the court." *Shepard v. United States*, 544 U.S. 13, 20 (2005) (internal citation omitted). When a defendant stipulates during his plea colloquy that a police report, probation report or similar document contains the factual basis for his plea, the court may also examine the incorporated document. *See id.*; *United States v. Almazan-Becerra*, 537 F.3d 1094, 1097–1100 (9th Cir. 2008); *United States v. Espinoza-Cano*, 456 F.3d 1126, 1131–32 (9th Cir. 2006).

In applying the modified categorical approach, the court may take into account only facts on which the defendant's conviction "necessarily rested." *Aguila-Montes*, 655 F.3d at 935–36. That does not mean, however, that courts are limited only to facts that show an *element* of the offense. *Id*. at 936–40. As long as the prosecution's theory of the case made proof of a given fact "necessary" to the defendant's conviction, that fact is within the scope of the modified categorical approach, irrespective of whether the fact is directly relevant to an element of the offense or merely incidental. *Id*.

During Ramos's plea colloquy, Ramos and his attorney confirmed that the admissions in Ramos's probation report formed the factual basis of Ramos's guilty plea. Ramos admitted to gaining entry to his neighbor's apartment through a window without permission or privilege, stealing some jewelry, and fleeing out the window when the neighbor returned. These facts demonstrate that the neighbor's apartment was not open to the public and that Ramos was not licensed or privileged to enter the apartment. Because

Ramos's conviction for burglary "necessarily rested" on facts showing that he made an unlawful or unprivileged entry into the apartment with intent to commit a crime, *Aguila-Montes*, 655 F.3d at 941, we conclude that Ramos was convicted of a "burglary of a dwelling," which is a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A).  Accordingly, the district court's application of a sixteen-level sentencing enhancement was not erroneous.

## C. Sentencing Adjustment for Acceptance of Responsibility

The Sentencing Guidelines allow district courts to grant a two-level downward adjustment to a defendant who "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a).  The defendant bears the burden of showing that he has accepted responsibility for his actions. *Cortes*, 299 F.3d at 1038 (citing U.S.S.G. § 3E1.1(a)).

Ramos argues that the district court erroneously interpreted the Sentencing Guidelines to forbid a downward adjustment for acceptance of responsibility when a defendant pleads not guilty and goes to trial.  We disagree with Ramos's characterization of the district court's decision.  The district court did not base its denial of the adjustment on Ramos's decision to put the government to its proof alone, but searched Ramos's conduct as a whole to determine whether he nevertheless accepted responsibility.  We hold that this analysis met the standard described in our previous cases.

A guilty plea is one way a defendant can demonstrate acceptance of responsibility, but it is not the only way. *Cortes*, 299 F.3d at 1038.  A defendant's right to contest his guilt before a jury is protected by the Constitution, and his

decision to do so "cannot be held against him." *Id*. (citing *United States v. Vance*, 62 F.3d 1152, 1157 (9th Cir. 1995)). Accordingly, a defendant who puts the government to its proof may still be eligible for a downward adjustment if, and only if, he has "otherwise demonstrated sincere contrition." *Id*.; *see also* U.S.S.G. § 3E1.1, cmt. n.2 (2007); *Ochoa-Gaytan*, 265 F.3d at 842–43; *United States v. McKinney*, 15 F.3d 849, 852 (9th Cir. 1994).

We decided *Ochoa-Gaytan*, *Cortes*, and *McKinney* before the Supreme Court's opinion in *Booker* rendered the Guidelines advisory.  543 U.S. at 245.  *Booker* makes the rule we announced in those cases less urgent, for a defendant's sentence now ultimately depends on the district court's judgment, not on the defendant's eligibility for certain sentencing range adjustments prescribed by the Guidelines. Apart from the calculation of the appropriate range under the advisory Guidelines, the sentencing court may consider acceptance of responsibility separately in imposing a sentence, even if the court determined that the defendant did not qualify for a formal adjustment on those grounds under the Guidelines.  This case was an example of that.  *See* U.S.S.G. § 5K2.0 (listing grounds for departing from the otherwise-recommended range); 18 U.S.C. § 3553(a) (listing factors on which district courts may base a below-Guidelines sentence).  As described above, the district court imposed a sentence substantially below the advisory guideline range in part because of Ramos's admissions.

Nevertheless, we continue to review whether the district court correctly calculated the Guidelines range as the first step in our review of criminal sentences. *See United States v. Barsumyan*, 517 F.3d 1154, 1157 (9th Cir. 2008).  Pursuant to this task, we review how district courts have applied the

acceptance of responsibility adjustment.  *See, e.g.*, *United States v. Garrido*, 596 F.3d 613, 617–18 (9th Cir. 2010).

We vacated the sentence in *Ochoa-Gaytan* because we concluded that the district court denied an acceptance of responsibility adjustment based on the defendant's decision to contest the evidence against him at trial.  265 F.3d at 842.  The court ignored the fact that "at the time of [the defendant's] arrest, he did admit . . . his [immigration] status," and "made no findings concerning whether Ochoa-Gaytan demonstrated contrition."  *Id*. at 842, 844 (internal quotations omitted).  Instead, it took into account only the fact that the defendant

> "moved to suppress his statements.  He went to trial.  The issue was factual guilt.  It wasn't to protect or preserve some constitutional issues.  I mean, it's been an all-out attack on his conviction.  And I don't see how 3E1.1. acceptance applies.  Basically, that is a whole guideline inducement to facilitate pleading guilty and to sweeten the pot.
>
> . . .
>
> [L]egally, I do not believe in any way that this adjustment applies on this kind of case. . . ."

*Id*. at 842 (quoting the district court; alterations in *Ochoa-Gaytan*).  On appeal, we concluded that the district court mistakenly applied a per se bar against downward adjustment based on the defendant's decision to go to trial.  *Id*. at 844.

Similarly, we concluded that the same mistake had been made in *Cortes*. 299 F.3d at 1039. The sentencing court had stated:

> "In terms of acceptance of responsibility, I also find that's a legal issue, and that the defendant in putting into question, and determination by the jury, the issue of . . . specific intent . . . . And this Court does not believe it is appropriate to award him any points for acceptance of responsibility."

*Id.* (quoting the district court). Because it appeared that "the district court may have believed, as a matter of law, that Cortes was ineligible for the reduction," we vacated the defendant's sentence and remanded "to allow the district court to fully explicate the issue in the first instance." *Id*.

In this case, the district court did not make the same mistake of law. It noted the fact that "this case went to a full blown jury trial," but it based its final decision on "the facts of this case and on this particular record" as a whole. This was the correct analytical approach. *See Cortes*, 299 F.3d at 1038.[4] The district court's ultimate decision that Petitioner had not adequately accepted responsibility was not clearly erroneous. "[A] defendant who . . . frivolously contests[] relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."

---

[4] Under this approach, a district court may deny the reduction after "balanc[ing] all the relevant factors," *Cortes*, 299 F.3d at 1039, but—in doing so—it "may not consider against the defendant any constitutionally protected conduct." *United States v. Sitton*, 968 F.2d 947, 962 (9th Cir. 1992) (quoting *United States v. Watt*, 910 F.2d 587, 592 (9th Cir. 1990)).

U.S.S.G. § 3E1.1 cmt. n.1(A).  Ramos contested the fact and validity of his deportation at trial.  The district court asked Ramos's counsel not to pursue this line of argument any further because it "r[an] afoul of the in-limine motion order with respect to the deportation order" and was not supported by any "offer of proof."  In addition, Ramos disputed during trial and in a motion for judgment of acquittal that he ever re-entered the United States.  The court denied the motion, holding that "[t]he evidence is rather overwhelming that . . . the defendant was detected and detained" in the United States.  On this record, the district court did not clearly err in finding that Ramos's actions were inconsistent with acceptance of responsibility.  Accordingly, we affirm Ramos's sentence.

**AFFIRMED**.