# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 19, 2013

Nos. 12-10484 c/w 12-10539

Lyle W. Cayce
Clerk

TRAVIS HUNTER BLANK,

Plaintiff-Appellant,

v.

HAROLD EAVENSON; BOB GUZIK; MEDICAL DOCTOR LES
SANDKNOP,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Texas
U.S.D.C. No. 3:11-cv-1327-K-BK

Before STEWART, Chief Judge, and HIGGINBOTHAM and JONES, Circuit
Judges.

PER CURIAM:[*]

Plaintiff-Appellant, Travis Blank appeals from the district court's grant
of Defendants-Appellees' motions to dismiss, and subsequent entries of final
judgment. Blank proceeds on appeal pro se. For the reasons provided herein,
we AFFIRM the final judgments of the district court.

## I. FACTS[1]

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

[1] For the limited purposes of this appeal, we treat as true all well-pleaded factual
allegations in Blank's complaint. The live complaint for purposes of this appeal is the

Nos. 12-10484 c/w 12-10539

Blank is a federal prisoner, convicted of the possession and transportation of child pornography. While in pre-trial detention, Blank was temporarily housed at the Rockwall County Jail (the "Jail"), in the vicinity of Dallas, Texas, pursuant to an arrangement with the U.S. Bureau of Prisons.

Defendant-Appellee, Harold Eavenson is the Sheriff of Rockwall County. Defendant-Appellee, Bob Guzik is the Jail's administrator. While not a county employee like Eavenson and Guzik, Defendant-Appellee, Les Sandknop, D.O. serves as the Jail's contractual primary care physician.

Blank suffers from "Crohn's disease," a chronic inflammatory bowel disorder. Upon his arrest and detention on June 30, 2009, Blank informed the Jail's medical intake staff of his condition. The charge nurse, Linda Bell, R.N. learned of Blank's condition shortly after his arrival.[2]

In his complaint, Blank alleges that Bell systematically denied him access to his personal gastrointestinal specialist, and to his pre-detention regiment of Crohn's medications on his desired timetable. As a result, Blank alleges that he suffered "serious complications," including "heavy internal bleeding." After an August 5, 2009 hearing before the U.S. District Court for the Eastern District of Texas in the child pornography proceedings, the magistrate judge ordered the

---

amended complaint Blank filed on November 28, 2011. Blank's appellate briefs contain additional factual allegations that did not appear in his pleadings. We do not credit these additional allegations on appeal. *See Vornado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam) (citations omitted).

[2] Bell is not a party to this appeal. However, Blank named Bell as a defendant in the district court proceedings. Along with Eavenson, Guzik, and Sandknop (the "current Appellees"), Bell moved for dismissal. The district court granted dismissal with prejudice to the three current Appellees, and later granted their subsequent motions for entry of final judgment. However, unlike the current Appellees' motions, Bell's motion turned on her assertion of qualified immunity. The district court denied Bell's motion without prejudice, and granted Bell's alternative motion, pursuant to Federal Rule of Civil Procedure ("FRCP") 7(a), for Blank to file a reply concerning qualified immunity. While Blank failed to file that reply, the district court proceedings involving Bell continue to the present date.

Nos. 12-10484 c/w 12-10539

U.S. Marshals to ensure that Blank's Crohn's disease was "thoroughly addressed and properly treated" while Blank remained in the Jail's custody.

Thereafter, the Jail arranged for Sandknop to examine Blank on August 11, 2009, August 26, 2009, February 23, 2010, and March 9, 2010. Blank alleges that Sandknop—who is not a gastrointestinal specialist—removed him from his pre-detention Crohn's medications, failed to conduct a full physical examination, and failed to prescribe appropriate replacement Crohn's medications. While Sandknop drew a blood sample during the February 23 examination, Blank alleges that the doctor failed to check him for intestinal swelling. While Sandknop prescribed medications for Blank's symptoms, Blank alleges that Sandknop refused to refer him to a specialist.

At another child pornography hearing before the Eastern District of Texas, the magistrate judge ordered that Blank be examined by his personal specialist. Blank alleges that Bell failed to comply with the magistrate judge's order. On March 13, 2010, Blank was admitted to the local emergency room with a fever of 104.2° F. The on-call doctor advised that Blank be examined by a gastrointestinal specialist within three days.

Nine days later, on March 22, 2010, Blank was taken to a gastrointestinal specialist (not his personal specialist). Rockland County Sheriff's Deputies escorted Blank to the examination. There, the specialist advised that Blank be admitted to a hospital for uninterrupted treatment. Blank alleges that Bell declined to comply with the specialist's advice.

On April 5, 2010, Bell again was admitted to the local emergency room, this time with severe dehydration, malnourishment, hemorrhaging, and anemia. Bell remained admitted through April 13, 2010, where he was fed by intravenous drip.

On April 14, 2010, upon learning of the Jail's handling of Blank's medical condition, the magistrate judge ordered Blank's release—with

3

monitoring—pending his trial on the child pornography charges. Upon his monitored release, Blank was examined by his personal gastrointestinal specialist, who advised Blank that he had suffered permanent scarring of his small intestine and permanent damage to his kidneys. Allegedly, the specialist also advised Blank that Sandknop had prescribed him improper medications for his symptoms.

## II. PROCEEDINGS

On June 17, 2011, Blank filed the instant suit in the U.S. District Court for the Northern District of Texas, pursuant to 42 U.S.C. § 1983, alleging that Sandknop and Bell had been deliberately indifferent to the risks posed by his Crohn's disease. Blank further alleged that Eavenson and Guzik had inadequately trained and supervised Bell and Sandknop. Finally, Bell alleged that Eavenson and Guzik had failed to create or enforce a policy of adequate supervision of Bell and Sandknop. Put differently, Blank's final allegation was that Eavenson and Guzik had implemented a policy of deliberate indifference to the risks posed by Bell and Sandknop's inadequate supervision of him.[3]

Sandknop moved to dismiss, arguing that, at best, Blank had stated a claim for medical negligence, and that Blank had not pled sufficient non-conclusory allegations to meet the relatively heightened standard to state a claim for deliberate indifference to medical risk.[4] Eavenson and Guzik also moved to dismiss, arguing that vicarious liability cannot lie in Section 1983 actions. With respect to Blank's claims for inadequate training/supervision,

---

[3] To be clear, the distinction between (i) Blank's claims against Eavenson and Guzik for inadequate training/supervision; and (ii) Blank's claims against Eavenson and Guzik for deliberate indifference to inadequate supervision, hinged on the defendants' personal participations in the alleged behaviors. We address this distinction in greater detail below. Blank proceeded against all four defendants in their individual capacities for money damages.

[4] Sandknop also argued that he had not acted under color of state law. The district court rejected this argument, which Sandknop does not pursue on appeal.

Nos. 12-10484 c/w 12-10539

Eavenson and Guzik argued that Blank had insufficiently alleged their personal involvement and that, in general, his allegations were vague and conclusory. With respect to Blank's claims for deliberate indifference to inadequate supervision, Eavenson and Guzik again argued that Blank's allegations were vague and conclusory. Blank filed a seventeen-page response and six-page sur-reply in opposition to the motions to dismiss, in which he made additional factual allegations that had not appeared in his pleadings.

In written recommendations dated February 14, 2012, the magistrate judge issued findings of facts and conclusions of law. Providing Blank leeway as a pro se litigant,[5] the magistrate judge ordered Blank to file an amended complaint against Sandknop within fourteen days. The magistrate judge otherwise recommended that the district court grant Eavenson, Guzik, and Sandknop's motions to dismiss. Concerning Eavenson and Guzik, the district court declined to order an amended complaint because Blank already had "alleged his best case against [those] Defendants, and the undersigned can conceive of no basis on which he could recover. . . ." While Blank filed timely objections to the magistrate judge's recommendations, he failed to file an amended complaint against Sandknop.

On March 1, 2012, the district court adopted the magistrate judge's recommendations. The district court dismissed all claims against Eavenson, Guzik, and Sandknop with prejudice, and granted those defendants' subsequent motions for entry of final judgment.

Blank timely appealed. As explained above in footnote 2, proceedings against Bell continue in district court. Therefore, Bell is not a party to this appeal.

### III. Standard of Review

---

[5] Blank presently is represented by counsel in the district court proceedings against Bell.

We review de novo the district court's grant of a motion to dismiss. *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356, 357 (5th Cir. 2012) (per curiam) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (citation omitted).

"In analyzing [a] complaint, we will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (citation omitted). That said, "conclusory allegations will not suffice to prevent a motion to dismiss, and neither will unwarranted deductions of fact." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (alteration, citation, and internal quotation marks omitted). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

## IV. DISCUSSION

A.  **Claim Against Sandknop for Deliberate Indifference to Medical Risk**
   1.  **Applicable Law**

"A pretrial detainee's constitutional right to medical care, whether in prison or other custody, flows from the . . . due process guarantees of the Fourteenth Amendment." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000) (footnote omitted) (analogizing to a post-trial prisoner's Eight Amendment protection from cruel and unusual punishment). "Liability for failing to provide

such care attaches if the plaintiff can show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Id.* (citation omitted).

"Deliberate indifference requires that the official have subjective knowledge of the risk of harm." *Id.* (citation and internal quotation marks omitted). "Mere negligence will not suffice, and deliberate indifference, i.e., the subjective intent to cause harm, cannot be inferred from a failure to act reasonably." *Id.* (alterations, citations, and internal quotation marks omitted). "To show subjective deliberate indifference, a plaintiff must present evidence": (i) "that each defendant had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn"; (ii) "that each defendant actually drew that inference"; and (iii) "that each defendant's response to the risk indicates that the [defendant] subjectively intended that harm occur." *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (per curiam) (citation and internal quotation marks omitted).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Id.* (citation omitted). "Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (citation and internal quotation marks omitted). A prison medical official's "failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)) (alteration and internal quotation marks omitted).

Nos. 12-10484 c/w 12-10539

Indeed, "the question whether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). The medical decision not to order additional diagnostic techniques or forms of treatment does not represent deliberate indifference to a medical risk. *See id.* "At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act." *Id.* (citing Tex. Rev. Civ. Stat. Ann. art. 6252-19, § 3 (West 1976), and noting that "this statute can be used by prisoners to assert malpractice claims").[6]

### 2.    Analysis

The tension of this issue is as follows:  It is true that the mere provision of medical treatment does not per se preclude a finding of deliberate indifference, and that deliberate indifference may be found if the treatment provided evidences (i) the conscious disregard of (ii) a serious medical need. *See Lawson v. Dallas Cnty.*, 286 F.3d 257, 262-63 (5th Cir. 2002).[7]  Here, the magistrate judge from the Eastern District of Texas—a layman with respect to the medical field—found Blank's need for treatment so apparent that he ordered Blank's monitored release from pre-trial detention.

Notwithstanding the magistrate judge's order, it only ensures that a deliberate indifference finding is not per se precluded.  Blank still must have

---

[6]  In 1985, the Texas legislature repealed Article 6252-19, and re-codified it as part of the newly-enacted Civil Practice and Remedies Code.  This repeal and re-codification was part of "a topic-by-topic revision of the state's general and permanent statute law without substantive change." *See* Tex. Civ. Prac. & Rem. Code Ann. § 1.001(a) (West 2013).  Section 3 of Article 6252-19 was scattered among multiple sections of the Civil Practice and Remedies Code. *See id.* Disposition Table.  However, the corresponding provision that is applicable here can be found at Section 101.021. *See id.* § 101.021 ("Governmental Liability").

[7]  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006) (citation omitted).

8

pled "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

We assume without deciding that the magistrate judge's order is tantamount to a finding that Blank established a sufficient basis for the "serious medical need" prong from *Lawson*. Blank, however, still makes no allegation sufficient to satisfy the "conscious disregard" prong. To state a facially plausible claim against Sandknop, Blank must satisfy both prongs from *Lawson*.

Sandknop examined Blank on August 11, 2009, August 26, 2009, February 23, 2010, and March 9, 2010. As documented above, Blank alleges that Sandknop removed him from his pre-detention Crohn's medications, failed to conduct a full physical examination, and failed to prescribe appropriate replacement Crohn's medications, causing, *inter alia*, permanent scarring of Blank's small intestine and permanent damage to his kidneys. Additionally, Blank alleges that Sandknop failed to check him for intestinal swelling and refused to refer him to a specialist. This is the full extent of the facts Blank alleges against Sandknop. The remaining facts alleged in Blank's complaint are applicable only to Bell.

Without more—even accounting for the fact that Blank is a pro se litigant—Blank cannot not establish "conscious disregard" on the part of Sandknop. Like the litigant in *Gamble*, Blank perhaps could establish serious medical malpractice in a Texas Tort Claims Act action. However, he may not use Section 1983 to assert deliberate indifference without stating even a single non-conclusory allegation of "conscious disregard" of the applicable standard of care (as opposed to simple deviation—even gross deviation—from that standard).[8]

---

[8] This is not to pre-judge the sufficiency of a Section 1983 claim against Bell, against whom Blank may have sufficiently alleged "conscious disregard." Since it is not before us, we

The district court rightly dismissed Blank's claim against Sandknop for deliberate indifference to medical risk.

## B.   Claims Against Eavenson and Guzik

### 1.   Claims for Inadequate Training/Supervision

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citations omitted).  Nevertheless, a supervisor may be held liable for the actions of subordinates if:  (i) "the [supervisor] failed to supervise or train the [subordinate]"; (ii) "a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights"; and (iii) "the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (citing, *inter alia*, *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)).  A claim for failure to train or supervise still requires "overt personal participation" by the supervisor—in that the supervisor must have overtly failed to train or supervise the subordinate, even if it was the subordinate who directly acted to inflict the constitutional deprivation upon the plaintiff. *Cf. Thompkins*, 828 F.2d at 304.

Here, Blank did not plead allegations against Eavenson and Guzik sufficient to form the basis of a claim under *Roberts* and *Thompkins*.  Rather, Blank's allegations require the Court to infer and speculate as to any alleged failures to train or supervise.

As the Jail's administrator, perhaps Guzik should have anticipated—or at least known of—Bell and Sandknop's alleged misdeeds.  After all, Bell was Guzik's employee and Sandknop was Guzik's contractor.  Speculation, however, is not the applicable pleading standard. *See Twombly*, 550 U.S. at 555 (citations

reach no definitive conclusion as to that question.

and footnote omitted). Without a single allegation that Guzik had constructive knowledge of Bell and Sandknop's alleged failings, let alone that Guzik was deliberately indifferent to such knowledge or that additional training or supervision would have made a difference, Blank cannot state a cognizable claim against Guzik under *Roberts* and *Thompkins*.

Any claim against Eavenson is even more speculative. Relative to Guzik, Eavenson (Rockwall County's Sheriff) is even further removed from Bell and Sandknop's activities at the Jail. Eavenson's only conceivable connection to Blank's complained-of activities is that Sheriff's Deputies had escorted Blank to his March 22, 2010 examination by a gastrointestinal specialist, who had advised that Blank be admitted to a hospital for uninterrupted treatment. Blank alleges that Bell declined to comply with the specialist's advice.

Let us assume *arguendo*, without deciding, that Bell indeed failed to comply with the specialist's advice, and that such failure was tortious. Blank still did not allege that the Sheriff's Deputies would or should have known that Bell failed to comply, or that Eavenson would or should have learned that information from the Deputies. Eavenson is simply too far removed from Bell and Sandknop's alleged conduct, at least as stated in Blank's pleadings. Accordingly, Blank cannot state a cognizable claim against Eavenson under *Roberts* and *Thompkins*.

The district court rightly dismissed Blank's claims against Eavenson and Guzik for inadequate training/supervision.

### 2. Claims for Deliberate Indifference to Inadequate Supervision

"Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of [a] constitutional violation." *Thompkins*, 828 F.2d at 304 (citing, *inter alia*, *Monell*

*v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978)) (footnote and internal quotation marks omitted).[9]  In order to be liable on such a theory of deliberate indifference to inadequate supervision, the supervisory officials must have had actual or constructive knowledge of the deficient policy at issue.  *See Bennett*, 735 F.2d at 862.

Here, in Paragraph 6 of his complaint, Blank alleged that Eavenson had violated his Due Process rights "with deliberate indifference" by "fail[ing] to create a policy to protect those rights" and by "fail[ing] to enforce a policy already created that would have [protected those rights]."  In Paragraph 7 of his complaint, Blank stated an identical allegation against Guzik.  Nowhere in his complaint, nor in his response/sur-reply to the motions to dismiss, did Blank meaningfully develop these general allegations.

"[C]onclusory allegations will not suffice to prevent a motion to dismiss, and neither will unwarranted deductions of fact."  *Willard*, 336 F.3d at 379 (alteration, citation, and internal quotation marks omitted).  Therefore, the district court rightly dismissed Blank's claims against Eavenson and Guzik for deliberate indifference to inadequate supervision.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the final judgments of the district court.

---

[9]  A policy includes a "persistent, widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *See Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam).