FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee*,

v.

CHRISTOPHER OSINGER,
       *Defendant-Appellant*.

No. 11-50338

D.C. No.
2:10-cr-00758-ODW-1

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, District Judge, Presiding

Argued and Submitted
July 10, 2013—Pasadena, California

Filed June 4, 2014

Before: Susan P. Graber, Johnnie B. Rawlinson,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Rawlinson;
Concurrence by Judge Watford

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction and sentence for stalking in violation of 18 U.S.C. § 2261A.

The panel held that because § 2261A proscribes harassing and intimidating conduct, it is not facially invalid under the First Amendment.  The panel rejected the defendant's argument that the statute's failure to define "harass" or "substantial emotional distress" renders it unconstitutionally vague.

The panel also rejected the defendant's contention that § 2261A was unconstitutionally applied to his protected speech, where the defendant engaged in a course of conduct, unmistakably proscribed by the statute, with the intent to harass and intimidate the victim and to cause her substantial emotional distress, and where any related speech was integral to the defendant's criminal conduct and involved sexually explicit publications concerning a private individual.

The panel held that the defendant was not entitled to a downward adjustment premised on acceptance of responsibility, and rejected a contention that a disparity with the sentence imposed on a defendant who pled guilty in a different stalking case rendered the sentence in this case unreasonable.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Concurring, Judge Watford wrote separately to add thoughts on why the as-applied challenge fails, including that the "speech integral to criminal conduct" exception to First Amendment protection surely applies when the defendant commits an offense by engaging in both speech and non-speech conduct, and the sole objective of the speech is to facilitate the defendant's criminal behavior.

## COUNSEL

Michael K. Cernyar, Long Beach, California, for Defendant-Appellant.

André Birotte Jr., United States Attorney, Robert E. Dugdale, Chief Criminal Division, Ryan White (argued), Assistant United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

## OPINION

RAWLINSON, Circuit Judge:

Appellant Christopher Osinger (Osinger) challenges his conviction for stalking in violation of 18 U.S.C. § 2261A. Osinger asserts a facial challenge to 18 U.S.C. § 2261A as unconstitutionally vague on its face and as applied to his conduct.

Osinger also maintains that the district court's sentence of 46 months' imprisonment was unreasonable because his acceptance of responsibility and a sentencing disparity

warranted a more lenient sentence.  We affirm Osinger's conviction and sentence.

## I.  BACKGROUND

Osinger was indicted for engaging in a course of harassing and intimidating conduct in violation of 18 U.S.C. §§ 2261A(2)(A) and 2261(b)(5).  The indictment alleged that Osinger sent several threatening and sexually explicit text messages, emails, and photographs of V.B., a former girlfriend, to V.B., as well as to her co-workers and friends. The indictment also alleged that Osinger "used the Internet to create a Facebook page in a name close to V.B.'s name" to post "suggestive and explicit photos of V.B." and "demeaning statements, purportedly made by V.B. . . ."

Prior to trial, Osinger sought dismissal of the indictment, asserting that 18 U.S.C. § 2261A(2)(A) was unconstitutionally vague.  The district court ruled that 18 U.S.C. § 2261A(2)(A) was not unconstitutionally vague and denied Osinger's motion to dismiss the indictment.

At trial, V.B. testified that she was introduced to Osinger through a mutual friend.  Osinger subsequently became V.B.'s  roommate and they became romantically involved. During their nine-month relationship, V.B. allowed Osinger to take nude photographs of her.

Osinger told V.B. that he had divorced his wife in 2005. V.B. eventually moved out of the apartment she shared with Osinger and ended their relationship when she discovered that Osinger was still married.  V.B. did not provide Osinger with her new address because she "didn't want him to contact [her]."  Osinger contacted V.B.'s sister-in-law and told her

that he knew where V.B. lived and that "he wanted to be with [V.B.]." According to V.B., Osinger "repossessed cars" and "could easily find addresses . . ." After Osinger spoke with V.B.'s sister-in-law, V.B. telephoned Osinger because she "wanted him to stop looking for [her] family or friends, and [she] wanted to hear what he had to say."

Osinger later came to V.B.'s new residence in an attempt at reconciliation. Osinger arrived in the "early hours of the morning, like 1, 2 in the morning." V.B. did not answer when he knocked on her window or door because she "didn't want to speak to him." Osinger also "came to [her] work a few times."

When V.B. eventually agreed to meet with Osinger, he told her that he was getting a divorce. Osinger left copies of divorce papers in V.B.'s mailbox, but V.B. doubted their authenticity because they lacked the signature of Osinger's wife or "any court stamps." V.B. informed Osinger that she was not interested in continuing their relationship and moved in with her sister. V.B. did not tell Osinger that she was living with her sister and did not provide him with the address. Nevertheless, Osinger called and texted V.B. and eventually came to her sister's home. V.B. informed him that she was not interested in reviving their relationship.

After V.B. received an offer for a new position in California, she informed Osinger that she was leaving Illinois. Osinger told her that "he would do anything for [them] to be back together," and was upset that V.B. left without saying goodbye. V.B. did not provide her California address to Osinger.

Following her relocation to California, V.B. continued to receive text messages from Osinger, including messages that he wanted "one last chance." V.B. contacted Osinger when he stated that he would move to California. V.B. told Osinger "to stop texting [her], to stop calling . . ."

V.B. continued to receive text messages from Osinger despite her remonstrations. Considering the content of the messages, V.B. inferred that Osinger had sexually explicit videos of her. V.B. construed the text messages as "a threat." She subsequently received a telephone call from an ex-boyfriend who informed her that "someone had posted a Facebook page with nude pictures of [V.B.] and horrible content . . ." When V.B. viewed the Facebook page, she recognized the photographs as ones that Osinger had taken of her. V.B. feared that her family might see the photographs, as one of her cousins had already accepted the Facebook posting.

V.B. contacted Carlos Enriquez, her supervisor, to assist her in removing the Facebook page. V.B. was "crying hysterically" and "could not believe what [Osinger] had done, and [she] was just shocked." Enriquez removed the Facebook page and informed V.B. that he had been contacted by another employee who had received "an e-mail through his [company] web e-mail with nude pictures of [V.B.]." V.B. received a telephone call from a former co-worker in Chicago that "he had also received an e-mail with nude pictures."

V.B. eventually reported the incidents to the Torrance Police Department because she "was scared. [She] did not know what else [Osinger] was going to try to do." V.B. ultimately obtained a restraining order against Osinger.

Enriquez corroborated V.B.'s testimony regarding her emotional state and his assistance in removing the Facebook page. Enriquez stayed with V.B. because she "was really bad, still shaking and kind of . . . desperate." Enriquez also received an email at work "with some pictures and with really bad content . . ." Enriquez contacted company headquarters to have the email blocked. When Enriquez informed V.B. about the email, she started to cry and shake.

Jason Roberts, V.B.'s former co-worker in Chicago, testified that he "received some pretty disturbing e-mails" on his corporate account. Roberts informed V.B., who "was very, very disturbed, very upset. . . ."

Darek Pawelek, V.B.'s ex-boyfriend, testified that he received a Facebook invite that he thought was from V.B., although the name was spelled differently. When Pawelek informed V.B. of the Facebook page's content, "[s]he got really upset. She started crying, saying things like [she didn't] know why he is doing this. Why won't he leave [her] alone. . . ."

The jury found Osinger guilty of stalking in violation of 18 U.S.C. §§ 2261A(2)(A) and 2261(b)(5) as alleged in count one of the indictment.

At sentencing, Osinger objected to the recommendation from the probation officer that a downward departure for acceptance of responsibility was unwarranted. Osinger also asserted that a more lenient sentence was supported by the 27-month sentence of another defendant convicted of violating 18 U.S.C. § 2261A. Osinger requested a six-month prison sentence and twelve months in a halfway house.

The district court calculated a base offense level of 18, an adjusted offense level of 22, and a guidelines range of 46 to 57 months' imprisonment. The district court rejected Osinger's request for a downward adjustment premised on acceptance of responsibility. After considering the requisite 18 U.S.C. § 3553(a) factors, the district court sentenced Osinger to 46 months' imprisonment, at the low end of the guidelines range, and three years of supervised release.

Osinger filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

"A challenge to the constitutionality of a statute is reviewed *de novo*." *United States v. Berry*, 683 F.3d 1015, 1020 (9th Cir. 2012) (citation omitted). "We also review *de novo* when a criminal statute is challenged for vagueness." *Id.* (citation omitted).

"We review a sentence for both procedural error and substantive reasonableness. . . ." *United States v. Joseph*, 716 F.3d 1273, 1276 (9th Cir. 2013) (citation omitted). "We review for clear error the district court's finding that [Osinger] did not accept responsibility for his crime." *United States v. Ramos-Medina*, 706 F.3d 932, 936 (9th Cir.), *as amended*, *cert. denied*, 134 S.Ct. 64 (2013) (citation omitted).

## III.    DISCUSSION

### A.  Constitutionality of 18 U.S.C. § 2261A[1,2]

#### 1.   Facial Challenge

Osinger contends that 18 U.S.C. § 2261A is facially unconstitutional because it prohibits speech protected by the

---

[1] 18 U.S.C. § 2261A(2)(A) provides:

> Whoever . . . (2) with the intent — (A) to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States . . . shall be punished as provided in section 2261(b) of this title.

[2] 18 U.S.C. § 2261(b) provides:

> A person who violates this section or section 2261A shall be fined under this title, imprisoned — (1) for life or any term of years, if death of the victim results; (2) for not more than 20 years if permanent disfigurement or life threatening bodily injury to the victim results; (3) for not more than 10 years, if serious bodily injury to the victim results or if the offender uses a dangerous weapon during the offense; (4) as provided for the applicable conduct under chapter 109A if the offense would constitute an offense under chapter 109A (without regard to whether the offense was committed in the special maritime and territorial jurisdiction of the United States or in a Federal prison); and (5) for not more than 5 years, in any other case, (6) Whoever commits the crime of stalking in violation of a temporary or permanent civil or criminal injunction, restraining order, no-contact order, or other order described in section 2266 of title 18, United States Code, shall be punished by imprisonment for not less than 1 year.

First Amendment. Osinger also argues that 18 U.S.C. § 2261A(2)(A) is overly broad because it does not define "substantial emotional distress" or "harassment."**³**

"In a facial challenge, a statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement. . . ." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir.), *as amended*, *cert. denied*, 133 S.Ct. 1510 (2013) (citation and internal quotation marks omitted). Although we have not extensively addressed the First Amendment implications of 18 U.S.C. § 2261A(2)(A), other circuits have rejected similar facial challenges.

For example, in *United States v. Petrovic*, 701 F.3d 849 (8th Cir. 2012), the Eighth Circuit observed that "[a]n overbreadth challenge . . . will rarely succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Id.* at 856 (citation, alterations, and

---

**³** In conclusory fashion, Osinger also asserts that "the Indictment filed in this case must be dismissed because it fails to state an offense." However, Osinger has waived any challenge to the sufficiency of the indictment as he provided no argument in support of this issue in his opening brief. *See Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 857 n.9 (9th Cir. 2012), *cert. denied*, 133 S.Ct. 1250 (2013) ("[T]he conclusory statement in [the defendant's] opening brief, unaccompanied by argument or citation to the record, is insufficient to preserve the issue for appeal, and we do not address it.") (citations omitted). In any event, the indictment sufficiently alleged the requisite elements to charge a violation of 18 U.S.C. § 2261A. *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1261 (9th Cir. 2013) ("Generally, an indictment is sufficient so long as it sets forth all the elements necessary to constitute the offense. . . .") (citation omitted).

internal quotation marks omitted). "Section 2261A(2)(A) is directed toward courses of conduct, not speech, and the conduct it proscribes is not necessarily associated with speech. . . ." *Id.* (alteration and internal quotation marks omitted). "Most, if not all, of the statute's legal applications are to conduct that is not protected by the First Amendment." *Id.* (citation and alteration omitted). Additionally, "[t]he rare application of the statute that offends the First Amendment can still be remedied through as-applied litigation." *Id.* (citation and internal quotation marks omitted). "Because a substantial number of the statute's applications will not be unconstitutional, [the Eighth Circuit] decline[d] to use the strong medicine of overbreadth to invalidate the entire statute." *Id.* (citations, alteration, and internal quotation marks omitted).

We agree with the Eighth Circuit's rationale that, because 18 U.S.C. § 2261A proscribes harassing and intimidating conduct, the statute is not facially invalid under the First Amendment. In particular, 18 U.S.C. § 2261A specifically criminalizes "a course of *conduct* that . . . causes . . . substantial emotional distress to [the harassee]." 18 U.S.C. § 2261A(2)(B) (emphasis added). Additionally, 18 U.S.C. § 2266(2) provides that "[t]he term 'course of conduct' means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." Thus, the proscribed acts are tethered to the underlying criminal conduct and not to speech. Moreover, we concur in the Eighth Circuit's reasoning that, "[b]ecause the statute requires both malicious intent on the part of the defendant and substantial harm to the victim, it is difficult to imagine what constitutionally-protected speech would fall under these statutory prohibitions." *Petrovic*, 701 F.3d at 856 (alterations and internal quotation marks omitted); *see also United States v. Sayer*, No. 12-2489,

– F.3d –, 2014 WL 1758453, at *7–*8 (1st Cir. May 2, 2014) (rejecting facial challenge to 18 U.S.C. § 2261A(2)(A) on similar grounds).[4]

Osinger's argument that 18 U.S.C. § 2261A(2)(A) is unconstitutionally vague because it does not define "harass" or "substantial emotional distress" is equally unavailing. "Vague statutes are invalidated for three reasons: (1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of laws based on arbitrary and discriminatory enforcement by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms. . . ." *United States v. Kilbride*, 584 F.3d 1240, 1256 (9th Cir. 2009) (citation and internal quotation marks omitted). None of these reasons applies here.

Contrary to Osinger's argument, "harass" and "substantial emotional distress" are not esoteric or complicated terms devoid of common understanding. *See, e.g.*, *Adams v. Ford Motor Co.*, 653 F.3d 299, 307 (3d Cir. 2011) ("Black's Dictionary [784 (9th ed. 2009)] defines harassment as 'words, conduct, or action (usu. repeated or persistent) that, being

---

[4] Our decision in *United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011), is not to the contrary. In that case, we held that, "[i]n order to affirm a conviction under any threat statute that criminalizes pure speech, we must find sufficient evidence that the speech at issue constitutes a true threat . . ." *Id.* at 1117 (internal quotation marks omitted). As the Eighth Circuit properly concluded in *Petrovic*, 18 U.S.C. § 2261A is targeted at a course of conduct, not speech. *See Petrovic*, 701 F.3d at 856 ("Section 2261A(2)(A) is directed toward courses of conduct, not speech, and the conduct it proscribes is not necessarily associated with speech. . . .") (alteration and internal quotation marks omitted). *Bagdasarian*, therefore, is inapplicable to our analysis of 18 U.S.C. § 2261A.

directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose. . . .'"); *see also Veile v. Martinson*, 258 F.3d 1180, 1189 (10th Cir. 2001) (describing "substantial emotional distress" to be "understood by persons of common intelligence" to mean "mental distress, mental suffering, or mental anguish, and includes depression, dejection, shame, humiliation, mortification, shock, indignity, embarrassment, grief, anxiety, worry, fright, disappointment, nausea, and nervousness, as well as physical pain" in the context of a state stalking statute) (citations omitted).  As the Fourth Circuit observed in *United States v. Shrader*, 675 F.3d 300 (4th Cir.), *cert. denied*, 133 S.Ct. 757 (2012), "[w]hatever other definitions one might hypothesize for the meaning of harass or intimidate, there can be little doubt that [the defendant's] stalking falls within the conduct the statute is intended to proscribe.  [The defendant's] own words evince his intent to cause substantial emotional distress. . . . In short, we reject [the defendant's] contention that his stalking convictions must be overturned on vagueness grounds."  *Id.* at 312 (citation, alteration, footnote reference, and internal quotation marks omitted).

Moreover, 18 U.S.C. § 2261A requires that the defendant act with the *intent* to harass, intimidate, or cause substantial emotional distress.  *See* 18 U.S.C. § 2261A(2)(A).  This scienter requirement, which the jury found had been proven beyond a reasonable doubt, thoroughly undermines Osinger's contention that he was unable to discern that his harassment of V.B. was proscribed by 18 U.S.C. § 2261A.  *See United States v. Jae Gab Kim*, 449 F.3d 933, 943 (9th Cir. 2006), *as amended* ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice

to the complainant that his conduct is proscribed. . . .") (citation omitted).

Osinger's threats, creation of a false Facebook page with sexually explicit photographs of V.B., and emails to V.B.'s co-workers and friends containing explicit photographs evinced Osinger's "intent to . . . cause substantial emotional distress . . ." 18 U.S.C. § 2261A(2). Thus, Osinger's unrelenting harassment and intimidation of V.B. was not based on conduct that he "could not have known was illegal." *Kilbride*, 584 F.3d at 1256.**[5]**

---

**[5]** Osinger contends that pending legislation to amend 18 U.S.C. § 2261A(2)(A) bolsters his vagueness challenge. Osinger relies on a proposed bill entitled "Simplifying The Ambiguous Law, Keeping Everyone Reliably Safe Act of 2011." H.R. 196, 112th Cong. (2011). Notably, even if the proposed amendments were otherwise relevant to our analysis, which we doubt, those proposals would not eliminate the terms that Osinger challenges as vague. Indeed, if any implication can be drawn, it is that the drafters did not consider the challenged terms "harass" and "emotional distress" to be ambiguous. The proposed bill provides:

> (a) Whoever, with intent to kill, physically injure, *harass*, or *intimidate* a person, or place under surveillance with the intent to kill, physically injure, *harass*, or *intimidate* a person, travels in interstate or foreign commerce or within the special maritime and territorial jurisdiction of the United States, or enters or leaves Indian country, and in the course of, or as a result of, such travel- (1) causes or attempts to cause bodily injury or *serious emotional distress* to a person other than the person engaging in the conduct; or (2) engages in conduct that would be reasonably expected to cause the other person *serious emotional distress*; shall be punished as provided in subsection (c).

## 2. As-Applied Challenge

Osinger next contends that 18 U.S.C. § 2261A(2)(A) was unconstitutionally applied to his protected speech.

"In an as-applied challenge, a statute is unconstitutionally vague if it fails to put a defendant on notice that his conduct was criminal. For statutes involving criminal sanctions the requirement for clarity is enhanced." *Harris*, 705 F.3d at 932 (citations, alterations, and internal quotation marks omitted).

Osinger's as-applied challenge is unpersuasive given the nature of the implicated speech. "The First Amendment prohibits any law abridging the freedom of speech. However, the Supreme Court has carved out some limited categories of unprotected speech, including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct." *United States v. Meredith*, 685 F.3d 814, 819 (9th Cir.), *cert. denied*, 133 S.Ct. 536 (2012) *sub. nom. Giordano v. United States* (citations, alteration, and internal quotation marks omitted). "At issue here is the First Amendment exception that allows the government to regulate speech that is integral to criminal conduct. . . ." *Id.* at 819–20.

In *Meredith*, we considered whether the defendants' convictions for advocacy of tax evasion violated the First Amendment. *See id.* at 817. In addition to selling books explaining how to avoid taxes, the defendants sold a

---

*Id.* (emphases added). Although the bill utilizes the term "serious emotional distress" in lieu of "substantial emotional distress," the proposed legislation does not support Osinger's vagueness challenge given that Osinger's proscribed course of conduct in threatening and intimidating V.B. caused both serious and substantial emotional distress.

particular type of financial trust "which they claimed was exempt from taxes. . . ." *Id.* at 818. The defendants were charged "with conspiring to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the IRS in the ascertainment, computation, assessment, and collection of federal taxes, in violation of 18 U.S.C. § 371. . . ." *Id.* In rejecting the defendants' First Amendment argument, we observed that "in those instances, where speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone." *Id.* at 820 (citation, alteration, and footnote reference omitted). Because the defendants' conduct "involved far more than mere advocacy of tax evasion," the First Amendment was not implicated by the defendants' "speech integral to criminal conduct." *Id.* at 819, 823 (citation omitted).

Although *Meredith* implicitly undermines Osinger's argument that he engaged in protected speech, other circuits have explicitly rejected as-applied challenges to 18 U.S.C. § 2261A(2)(A). In *Petrovic*, the defendant sent the victim text messages stating that he had sexually explicit images of her, which the defendant subsequently mailed as postcards to the victim's family and workplace. *See Petrovic*, 701 F.3d at 852–53. The defendant also designed a website containing links to the images. *See id.* at 853. In rejecting the defendant's as-applied challenge, the Eighth Circuit reasoned that the defendant's "communications fall outside the First Amendment's protection" because "[t]he communications for which [the defendant] was convicted under § 2261A(2)(A) were integral to this criminal conduct as they constituted the means of carrying out his extortionate threats. . . ." *Id.* at 854–55 (citation omitted).

In *Shrader*, the Fourth Circuit similarly rejected the defendant's as-applied challenge. In that case, the defendant made a series of harassing phone calls to the victim and her family. *See Shrader*, 675 F.3d at 304. The Fourth Circuit observed that "[t]he statute contains three important elements. First, the defendant must possess either the intent to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State . . ." *Id.* at 309–10 (citation and internal quotation marks omitted). "Second, the defendant must pursue that intention through a course of conduct, defined as a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose, that makes use of a facility of interstate commerce[.]" *Id.* at 310 (citations and internal quotation marks omitted). "Finally, the defendant's conduct must in fact cause substantial emotional distress to the intended victim or place that person in reasonable fear of the death of, or serious bodily injury . . ." *Id.* (citation, alterations, and internal quotation marks omitted). Based on the defendant's harassing and intimidating conduct, the Fourth Circuit held that "the statute clearly proscribed [the defendant's] particular conduct in this case. There can be little doubt that [the defendant's] conduct was harassing and intimidating . . ." *Id.* at 312. As a result, the defendant's "own words evince his intent to cause substantial emotional distress . . ." *Id.* (citation and internal quotation marks omitted).

We reach a similar conclusion in this case. Pursuant to 18 U.S.C. § 2261A(2)(A), Osinger engaged in a course of conduct "with the intent . . . to . . . harass, or intimidate, or cause substantial emotional distress to" V.B. V.B. told Osinger repeatedly that she no longer wanted to be contacted by him. Nonetheless, Osinger was unrelenting in his pursuit

and harassment of her, including threatening text messages. Osinger designed a false Facebook page and sent emails to V.B.'s co-workers containing nude photographs of V.B. Any expressive aspects of Osinger's speech were not protected under the First Amendment because they were "integral to criminal conduct" in intentionally harassing, intimidating or causing substantial emotional distress to V.B. *Meredith*, 685 F.3d at 819–20. Pursuant to 18 U.S.C. § 2261A(2)(A), Osinger was on notice that his harassing and intimidating conduct "was criminal." *Harris*, 705 F.3d at 932.**[6]**

In the limited context of 18 U.S.C. § 2261A, Osinger's speech is not afforded First Amendment protection for the

---

**[6]** In *United States v. Cassidy*, 814 F. Supp. 2d 574, 588 (D. Md. 2011), the district court granted a motion to dismiss the indictment because 18 U.S.C. § 2261A(2)(A) was unconstitutional as applied to the defendant. However, *Cassidy* is entirely distinguishable from the present appeal. In that case, the district court held that 18 U.S.C. § 2261A contravened the First Amendment as applied because the victim was "a well-known religious figure" and the defendant's "Tweets and Blog posts about [the victim] challenge[d] her character and qualifications as a religious leader." *Id.* at 583 (citation omitted). "And, while [the defendant's] speech may have inflicted substantial emotional distress, the Government's Indictment . . . [was] directed squarely at protected speech: anonymous, uncomfortable Internet speech addressing religious matters. . . ." *Id.*

Other district courts have distinguished *Cassidy* in rejecting similar constitutional challenges to 18 U.S.C. § 2261A. *See, e.g.*, *United States v. Sayer*, Nos. 2:11-CR-113-DBH, 2:11-CR-47-DBH, 2012 WL 1714746, at *2–*3 (D. Me. May 15, 2012) (distinguishing *Cassidy* and concluding that the defendants' online posting of sexually explicit material and harassment of the victim was not protected speech); *United States v. Shepard*, No. CR 10-1032-TUC-CKJ, 2012 WL 1580609, at *5, (D. Ariz. May 4, 2012) (holding that *Cassidy* was inapposite because the defendant's use of the internet to stalk the victim was not protected speech).

additional reason that it involved sexually explicit publications concerning a private individual. In *Petrovic*, the Eighth Circuit observed that the victim was "a private individual" and that the defendant's "communications revealed intensely private information about [the victim]." 701 F.3d at 855 (citation omitted). The Eighth Circuit opined that "the interstate stalking statute is viewpoint neutral. It proscribes stalking and harassing conduct without making the further content discrimination of proscribing only certain forms of that conduct." *Id.* at 855–56 (citation omitted). "[T]he intimately private facts and photographs revealed by [the defendant] were never in the public domain before [the defendant] began his campaign to humiliate [the victim]." *Id.* at 856. Additionally, "the public has no legitimate interest in the private sexual activities of [the victim] or in the embarrassing facts revealed about her life," and "the information [the defendant] publicized to the community was highly offensive." *Id.* (citations omitted). "The communications for which [the defendant] was convicted under § 2261A(2)(A) may be proscribed consistent with the First Amendment. The statute is not unconstitutional as applied to [the defendant]." *Id.*

Osinger's as-applied challenge is similarly unavailing given his intent to harass and intimidate a private individual by circulating sexually explicit publications that were never in the public domain. Applying the logic of *Petrovic* and *Shrader*, we reject Osinger's as-applied challenge to 18 U.S.C. § 2261A.

## B. Osinger's Sentence

### 1. Acceptance of Responsibility

Osinger asserts that the district court erred in denying his request for a downward departure premised on acceptance of responsibility. According to Osinger, he intended to plead guilty and proceeded to trial only to preserve his constitutional challenge to 18 U.S.C. § 2261A.

"The Sentencing Guidelines allow district courts to grant a two-level downward adjustment to a defendant who clearly demonstrates acceptance of responsibility for his offense." *Ramos-Medina*, 706 F.3d at 940 (citation and internal quotation marks omitted). "The defendant bears the burden of showing that he has accepted responsibility for his actions." *Id.* (citation omitted).

At trial, Osinger did not simply pursue his First Amendment challenge to 18 U.S.C. § 2261A. Instead, Osinger asserted that his actions were the legal equivalent of "being prosecuted for ripping the label off a mattress. . . ." His counsel argued that Osinger was "charged with stalking in the absence of evidence to prove it. There is no history of any violence. There is no history of any threat of violence. There is no history that he ever waited outside her house. There is no history that he ever visited her in Los Angeles." His counsel maintained that "[w]hat the government is asking in this case is that the conviction rest solely on the fact that somebody hurt somebody else's feelings really, really badly." Osinger also challenged the jurisdictional basis for the charges by arguing that he thought that he was communicating only with individuals in Chicago where Osinger resided. Osinger asserted that there was no evidence

of any threats and that he did not direct the e-mails to V.B., as he sent them only to her co-workers. Osinger argued that there was "[n]o evidence of repetitious conduct and no evidence of malice. A love obsession is not malice. . . ." Finally, Osinger maintained that he was not guilty of stalking because he did not contact V.B. after sending the pictures. "On this record, the district court did not clearly err in finding that [Osinger's] actions were inconsistent with acceptance of responsibility. . . ." *Ramos-Medina*, 706 F.3d at 942.

In addition to challenging his guilt at trial, Osinger failed to demonstrate the requisite contrition to warrant a downward adjustment for acceptance of responsibility. *See United States v. Dhingra*, 371 F.3d 557, 568 (9th Cir. 2004), *as amended* (holding that the defendant "did not meet his burden of demonstrating 'genuine contrition for his acts'") (citation omitted). Osinger expressed that he "deeply regret[ted] his conduct." However, he conveyed his regrets in the context that "as in many breakups things were said and done that people regret. Here, Mr. Osinger said and did things out of anger. . . ." Rather than directly accepting responsibility for his conduct, Osinger intimated that his actions stemmed from V.B.'s refusal to reconcile. Such equivocal expressions of contrition "did not meet [the defendant's] burden of demonstrating genuine contrition for his acts," and "it was not clearly erroneous for the district court to deny downward adjustment for acceptance of responsibility." *Dhingra*, 371 F.3d at 568 (citation and internal quotation marks omitted).

## 2. Sentencing Disparity

Finally, Osinger contends that his sentence was unreasonable because another defendant received a more

lenient sentence despite engaging in more extensive and intrusive stalking. However, Osinger was not similarly situated to the defendant who received a more lenient sentence after pleading guilty in a different case. *See United States v. Espinoza-Baza*, 647 F.3d 1182, 1195 (9th Cir. 2011) ("It does not matter for the purposes of § 3553(a) that [the defendant] can point to other criminal defendants who may have received lighter sentences under materially different circumstances. . . .") (citation, alterations, and internal quotation marks omitted). Osinger's sentencing disparity argument is undermined by his more extensive criminal history. *See id.* (observing that the defendant was not similarly situated to other defendants because "[t]here is nothing in the record suggesting that these other defendants had comparable criminal histories") (citation omitted). Moreover, Osinger's sentence was at the low end of the guidelines range. *See United States v. Green*, 592 F.3d 1057, 1072 (9th Cir. 2010) ("We have trouble imagining why a sentence within the Guidelines range would create a disparity, since it represents the sentence that most similarly situated defendants are likely to receive.") (citation and alteration omitted). We hold that Osinger's sentence was procedurally and substantively reasonable.

## IV.    CONCLUSION

We adopt the reasoning articulated by the Eighth and Fourth Circuits in *Petrovic* and *Shrader* and hold that Osinger's facial and as-applied challenges to 18 U.S.C. § 2261A are unavailing. Osinger's threatening messages to V.B. and his sending of sexually explicit photographs to V.B.'s co-workers and friends unquestionably evinced Osinger's intent to harass and intimidate V.B. and to cause substantial emotional distress. Osinger's course of conduct

was unmistakably proscribed by 18 U.S.C. § 2261A, and any related speech was not afforded First Amendment protection, as it was integral to Osinger's criminal conduct and involved sexually explicit publications concerning a private individual.

The district court's sentence of 46 months' imprisonment, at the low end of the guidelines range, was reasonable because Osinger was not entitled to any downward adjustment premised on acceptance of responsibility or on sentencing disparity.

**AFFIRMED.**

---

WATFORD, Circuit Judge, concurring:

I agree with my colleagues that Christopher Osinger's conviction and sentence for violating 18 U.S.C. § 2261A should be affirmed, notwithstanding his First Amendment objections. I write separately to add a few additional thoughts on why Osinger's as-applied challenge fails.

I

I agree with the court that Osinger's speech isn't entitled to First Amendment protection because it was "speech integral to criminal conduct." *See United States v. Stevens*, 559 U.S. 460, 468 (2010); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949). This exception to the First Amendment has been and remains controversial; its boundaries and underlying rationale have not been clearly defined, leaving the precise scope of the exception unsettled. *See* Eugene Volokh, *Speech as Conduct: Generally*

*Applicable Laws, Illegal Courses of Conduct, "Situation-Altering Utterances," and the Uncharted Zones*, 90 Cornell L. Rev. 1277, 1311–26 (2005). But whatever difficulties may arise from application of the exception in other contexts, it surely applies when the defendant commits an offense by engaging in both speech and non-speech conduct, and the sole objective of the speech is to facilitate the defendant's criminal behavior. In those circumstances, the defendant's speech loses whatever First Amendment protection it might otherwise have enjoyed, even if the speech, considered in isolation, would be fully protected.

That, in my view, is the proper reading of *Giboney*. There, a labor union engaged in non-speech conduct that amounted to, as the Court later put it, "a secondary boycott which a State had validly outlawed." *New York v. Ferber*, 458 U.S. 747, 762 n.14 (1982). Specifically, the union orchestrated a series of agreements among Kansas City ice distributors under which they pledged not to sell ice to non-union peddlers, conduct that violated Missouri's anti-trade-restraint law. *Giboney*, 336 U.S. at 492. When the lone holdout distributor (Empire) refused to join the boycott, the union "informed Empire that it would use other means at its disposal to force Empire to come around to the union view." *Id.* Union members began picketing Empire with placards protesting its willingness to deal with non-union peddlers. The "avowed immediate purpose of the picketing was to compel Empire to agree to stop selling ice to nonunion peddlers"—an agreement that would have been punishable as a felony under Missouri law. *Id.* Empire sought an injunction prohibiting the picketing.

Although the union was engaged in peaceful picketing that "publicize[d] truthful facts about a labor dispute"—

speech which, standing on its own, would have been fully protected under the First Amendment—the Court held that the union's speech could not be "treated in isolation." *Id.* at 498. The union's speech lost whatever First Amendment protection it might otherwise have enjoyed, the Court concluded, because it was "used as an integral part of conduct in violation of a valid criminal statute," and its "sole immediate object" was to facilitate the union's commission of that offense. *Id.* That the union's unlawful course of conduct "was in part initiated, evidenced, or carried out by means of language" mattered not for First Amendment purposes. *Id.* at 502.

Osinger's case fits comfortably within this formulation of the exception for speech integral to criminal conduct. As in *Giboney*, we're dealing with a valid criminal statute: No one disputes that, as a general matter, Congress has the power to punish those who engage in interstate stalking. And the court properly rejects Osinger's facial challenge to the particular variant of that crime at issue here—engaging in a course of conduct intending to harass or inflict substantial emotional distress on a person in another State. 18 U.S.C. § 2261A(2)(A). As I'll sketch out below, Osinger committed the crime of interstate stalking by engaging in a course of conduct that consisted of both speech and non-speech conduct. True, Osinger engaged in some speech that, considered in isolation, might have been entitled to First Amendment protection. But as the court correctly holds, that speech lost whatever protection it might have enjoyed because its "sole immediate object" was to facilitate his commission of the stalking offense. *Giboney*, 336 U.S. at 498.

II

Like many stalking offenses, this one began with a failed relationship. The victim in this case, V.B., broke up with Osinger when she discovered that he was married to another woman. A few months after V.B. ended their relationship, Osinger began showing up uninvited at V.B.'s home. On multiple occasions, he arrived around 1:00 or 2:00 a.m. and telephoned her or knocked at her window or door. V.B. refused to speak with him, but Osinger continued to make unwanted visits to her home anyway. He also appeared several times at the restaurant where V.B. worked. After these encounters, V.B. moved to another neighborhood, hoping that Osinger's unwanted visits to her home, at least, would stop.

They didn't. As a repossession agent, Osinger could easily get addresses for people he wanted to find, and he successfully tracked V.B. down at her new home. The two briefly reconciled, but that ended when V.B. concluded that Osinger had given her fraudulent divorce papers and was seeing other women. After ending their relationship for the final time, V.B. moved in with her sister, hoping Osinger wouldn't be able to find her there. But despite V.B.'s decision to conceal her new address from Osinger, he surprised her by showing up at her sister's apartment. He also called her and sent her text messages. V.B. responded by telling Osinger their relationship was over.

After a year of dealing with Osinger's harassing behavior, V.B. moved from Illinois to California, in part to get away from him. She didn't tell Osinger where she was moving, and she didn't give him her new address. For months, she had no direct contact with him. V.B. appeared to have made

a clean break: She had a new job, a new home, and what she believed was a fresh start with Osinger out of her life.

Then, out of the blue, Osinger started contacting V.B. again. Over the course of two days, she received approximately 40 text messages from him. The messages started out with declarations of love, but they quickly turned nasty—e.g., "You truly are the Devil.. I hate you I HATE U."—when V.B. made it clear that she would not give him another chance. From there, Osinger's messages took on a threatening tone:

- Trust me after this weeknd ur going to feel like I ass FUKD U.

- Am going to make sure u fucking hate me. After this weeknd.

- So buckle up. This ride isn't over just yet!!! . . .

- If I was you I get a big bottle. To drink. Ur going to need it.

- So enjoy... What's to come.

- [A]m about to pull the rug from rite under ur sexxy lil feet!!!

That weekend, Osinger made good on his threats. V.B. got a call from an ex-boyfriend who told her that he had received a "friend" request from what appeared to be a fake Facebook account set up under her name (with a minor spelling error). When V.B. accessed the Facebook page, she was horrified by what she saw. Someone—Osinger, it turned

out—had posted over 30 photos of V.B., many of them sexually explicit, organized into two albums titled "WHORE" and "WHORE2." Some of the photos showed V.B. topless or bottomless. Others showed her partially or fully nude and masturbating. Still others showed her performing oral sex. The statements posted on the page, purportedly made by V.B., included: "I like to go out and be the whore I am I uslly get a job and fuck my bosses rite now I work for [company name redacted] look me up pass my pix around . . . I just move to [city redacted]," and "if you want video,, just send me ur email." Osinger sent "friend" requests to V.B.'s family members and friends to encourage them to view the Facebook page.

V.B. immediately called her boss to enlist his help in taking the Facebook page down before any more of her friends or family members saw it. During that call, V.B.'s boss told her that one of her co-workers, who also happened to be V.B.'s roommate, had just received a disturbing email sent to his company account. The email, sent by Osinger, stated that he knew the recipient was working with V.B., offered supposed "tips" on what to do if the recipient wanted to sleep with V.B., and ended by saying, "if you want video send a mesg back I got tons." The email attached some of the photos Osinger had posted on the Facebook page, depicting V.B. partially or fully nude and performing oral sex. Osinger later sent the same email, lewd photos included, to V.B.'s boss and one of V.B.'s former co-workers in Chicago, before the company's IT department blocked Osinger's email address.

After learning about the fake Facebook page and the disturbing emails Osinger had sent to her co-workers, V.B. was understandably distraught. As she testified at trial, "I

was scared. I did not know what else he was going to try to do." V.B. quickly sought and received a restraining order against Osinger.

III

As these facts show, Osinger engaged in a course of conduct that amounted to interstate stalking. It began in Illinois when he harassed V.B. by repeatedly showing up at her home and workplace, despite her efforts to avoid him. It continued after she moved to California, initially through a string of unwelcome and implicitly threatening text messages, and then through a fake Facebook page and emails sent to V.B.'s co-workers.

The text messages, emails, and Facebook page constitute speech that, considered in isolation, might have been entitled to First Amendment protection. I say "might" because the notion that any of Osinger's speech should receive full First Amendment protection is certainly debatable. The text messages quoted above were sent only to V.B., an unwilling listener, with no apparent purpose other than to harass or frighten her. *See* Eugene Volokh, *One-to-One Speech vs. One-to-Many Speech, Criminal Harassment Laws, and "Cyberstalking,"* 107 Nw. U. L. Rev. 731, 742–43 (2013). They formed part of the basis for Osinger's prosecution not because of any expressive idea they communicated, *see Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 208 (3d Cir. 2001), but rather because of the "implicit threat of conduct" they contained. *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 710 (9th Cir. 2010). Still, there is no categorical exception to the First Amendment for harassing or offensive speech, *id.* at 708, and it's hard to say that the text messages rise to the level of "true threats" under *Virginia*

*v. Black*, 538 U.S. 343, 359 (2003), the closest recognized exception, given their content and the absence of any history of violence between Osinger and V.B. With respect to the emails and Facebook page, they don't fall within any currently recognized exception either; the Supreme Court has left unresolved whether the First Amendment protects unauthorized disclosure of intensely private facts about a purely private figure. *See Time, Inc. v. Hill*, 385 U.S. 374, 383 n.7 (1967); *cf. Snyder v. Phelps*, 131 S. Ct. 1207, 1217 (2011) (suggesting that highly offensive speech on matters of purely private concern might not be insulated from civil liability). All of this is simply a long way of saying that we have to assume Osinger engaged in at least some speech that could be constitutionally protected.

None of that speech is entitled to constitutional protection here, however, because all of it falls within the exception for speech integral to criminal conduct. Osinger used the text messages, emails, and Facebook page "as an integral part of conduct in violation of a valid criminal statute," *Giboney*, 336 U.S. at 498—namely, his ongoing campaign to harass V.B. through repeated unwanted contacts. Unable to harass her in person after she left Illinois, he used speech to continue the campaign. *See* John B. Major, Note, *Cyberstalking, Twitter, and the Captive Audience: A First Amendment Analysis of 18 U.S.C. § 2261A(2)*, 86 S. Cal. L. Rev. 117, 126 (2012). Because the "sole immediate object" of Osinger's speech was to facilitate his commission of the interstate stalking offense, that speech isn't entitled to constitutional protection. *Giboney*, 336 U.S. at 498.

What makes this a straightforward case is the fact that Osinger committed the offense by engaging in both speech and unprotected non-speech conduct. For the speech-

integral-to-criminal-conduct exception to apply, the conduct need not have been criminal on its own; it's enough if the conduct and speech together "constituted a single and integrated course of conduct, which was in violation of [a] valid law." *Id.* Here, the non-speech conduct consisted of in-person harassment, which, together with the text messages, emails, and Facebook page, violated § 2261A(2). In other cases the non-speech conduct might consist of categorically unprotected speech, like the extortionate threats in *United States v. Petrovic*, 701 F.3d 847, 855 (8th Cir. 2012), or non-communicative aspects of speech, like repeated unwanted telephone calls that are harassing due to their sheer number and frequency. *See Gormley v. Dir., Conn. State Dep't of Probation*, 632 F.2d 938, 941–42 (2d Cir. 1980).

Cases in which the defendant's harassing "course of conduct" consists entirely of speech that would otherwise be entitled to First Amendment protection are less straightforward. The Court in *Giboney* made clear that the union's picketing lost its First Amendment protection only because the union was "doing more than exercising a right of free speech or press." 336 U.S. at 503. If a defendant is doing nothing but exercising a right of free speech, without engaging in any non-speech conduct, the exception for speech integral to criminal conduct shouldn't apply. Instead, when pure speech is involved, the Court has suggested that the government's ability "to shut off discourse solely to protect others from hearing it" depends on "a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen v. California*, 403 U.S. 15, 21 (1971). It's unclear whether this standard would apply in a § 2261A prosecution in which the defendant caused someone substantial emotional distress by engaging

only in otherwise protected speech.  That is a question whose resolution we wisely leave for another day.