**FILED**
**JUNE 16, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38127-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ALAN R. MCDOWELL, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Alan McDowell appeals his convictions for stalking and violation of a civil antiharassment protection order. We affirm.

## FACTS

In 2012, Alan McDowell and Kathleen Armstrong worked together at the East Central Community Center in Spokane. Mr. McDowell was a practicum student from a local community college, and Ms. Armstrong was the community center's recreation supervisor. Mr. McDowell and Ms. Armstrong's time together at the community center was unremarkable. In December 2012, Ms. Armstrong left her job at the community

center and began employment with the City of Spokane's police department. Ms.

Armstrong had no contact with Mr. McDowell for several years after leaving the

community center.

In 2015, Mr. McDowell reinitiated contact with Ms. Armstrong by sending her

a Facebook friend request. After initially accepting the request, Ms. Armstrong quickly

reversed course and unfriended Mr. McDowell as she felt his Facebook page contained

a number of angry, anti-law enforcement posts.

Subsequently, Mr. McDowell left a letter in an envelope addressed to

Ms. Armstrong at her place of work. The letter was titled "'Senior Abuse'" and

addressed to the chief of police, the county sheriff, and a retirement home. 1 Report of

Proceedings (RP) (Mar. 1, 2021) at 36. The contents of the letter were nonsensical,

containing information about Mr. McDowell's grandmother and an incident where

Mr. McDowell was institutionalized for schizophrenia.

In December 2015, Ms. Armstrong began receiving e-mails from Mr. McDowell

through her work e-mail address. These e-mails covered various subjects, but one

included a link to a YouTube video where Mr. McDowell made a threat to "[crack]

a firearm over" the chief of police. *Id.* at 37-38. Ms. Armstrong reported this e-mail

to her supervisor and provided the supervisor with all of Mr. McDowell's e-mails.

Ms. Armstrong then blocked Mr. McDowell's e-mail address. Ms. Armstrong's supervisor also had a community resource officer visit Mr. McDowell and inform him his e-mails were frightening Ms. Armstrong and she wanted him to stop sending e-mails to her.

Mr. McDowell complied with the request to stop sending e-mails, but began sending Ms. Armstrong messaging requests through Facebook. Ms. Armstrong did not open or respond to these requests. In 2017, Ms. Armstrong deleted her Facebook account after Mr. McDowell replied to comments she left on a post at a community Facebook page.

Over the course of 2017, Mr. McDowell made 12 public records requests for information relating to Ms. Armstrong. One of these requests was for Ms. Armstrong's daily work schedule, which concerned her.

In October 2017, Mr. McDowell contacted Ms. Armstrong's father, Richard Law, via letter and e-mail. Mr. Law was a retired professor, and Mr. McDowell's communications requested a review of documents he had created. Mr. Law, unaware at the time of Mr. McDowell's contacts with Ms. Armstrong, did so. When Mr. Law later shared this information with Ms. Armstrong, she became concerned because, prior to this contact, Mr. McDowell had no affiliation with Mr. Law.

In 2017, Ms. Armstrong's supervisor, Jacqui MacConnell, began receiving documents from Mr. McDowell both concerning Ms. Armstrong and to be provided to Ms. Armstrong. In October, Ms. MacConnell had a face-to-face talk with Mr. McDowell where she instructed him not to contact Ms. Armstrong again, and to direct any questions Mr. McDowell had about the police department to her. Mr. McDowell did not obey these instructions, and continued to send Ms. MacConnell communications to pass along to Ms. Armstrong. He also continued to send Ms. Armstrong messaging requests on Facebook to a new account she had created.

In January 2018, Ms. MacConnell had another in-person meeting with Mr. McDowell. Ms. Armstrong also participated in this meeting, and confronted Mr. McDowell about his communications with Ms. MacConnell, Mr. Law, and his messaging requests to her. Ms. Armstrong asked Mr. McDowell to stop all communication with her and her father, and expressed that his behavior was frightening her. Mr. McDowell acknowledged this request, apologized, and agreed to cease attempting to contact Ms. Armstrong.

Nevertheless, in the weeks following this meeting, Mr. McDowell contacted Ms. MacConnell about Ms. Armstrong at least nine times. In March 2018, Mr. McDowell made the previously noted public records request for Ms. Armstrong's daily work

schedule. In May, Mr. McDowell again sent Mr. Law a letter. In the rambling correspondence, Mr. McDowell thanked Mr. Law for his editorial assistance, but also stated:

> my mom door jams my arm like she did to my grandmother a 1000 times in her life and I end up not going to the funeral. Your daughter let the woman run around scott free while chasing me around like a slave with this violent socialist department. Your daughter misused a business conflict of interest whom attempted to kill me multiple times!!!

Ex. 1 at 2. Mr. Law shared the letter with Ms. Armstrong and she was frightened when she read the reference about killing. Mr. McDowell also sent Mr. Law 71 Facebook messages in a 24-hour period.

Also in May, Ms. Armstrong began receiving messages from Mr. McDowell on Facebook Messenger. These messages concerned conspiracy theories about the police, and Ms. Armstrong's supposed involvement in various cover-ups or misconduct. One message stated:

> I [i.e., Mr. McDowell] stated that there was also an issue talked about by another worker at East Central under Kathy Armstrong. Melinda told me that if I ever attempted to bust the Spokane Police Department as an informant, I would have to partake in illegal activities such as rape, or I would be killed. When you go into a situation and learn information about illegal activities, you're required to engage to protect your life.

Ex. 2 at 4. Ms. Armstrong was concerned that if Mr. McDowell felt like he had to rape

someone in order to become an informant, she may be a target as she was a primary focus

of his energies.

On May 15, Ms. Armstrong petitioned for and received a temporary stalking and

harassment order for protection against Mr. McDowell in Spokane County District Court.

Mr. McDowell was served with the order the following day. Nevertheless, on May 18

Mr. McDowell called the police department and left two voicemails asking the chief

of police to contact Ms. Armstrong on his behalf. Audio recordings of the two calls

were admitted into evidence at trial. Mr. McDowell also prepared an apology letter

for the district court action on the temporary protection order. The letter, signed by

Mr. McDowell, was dated and filed on May 21:

> Dear Kathy Armstrong,
>
> I'm sorry that I used such an aggravating, angry, demeaning, embarrassing, and illegal political strategy to bring you into the courtroom. . . . I felt that any and all verbal communications between us had to be made in the courtroom to protect our lives and the lives of others. . . . Over the past three years there have been escalated feuds that have been going on in the police department that I feel create unsafe working conditions. I worry every day for your safety based on what East Central workers under your supervision told me years ago and recent activities that have been brought to light as well as behaviors I see of those whom [sic] work with you inside the police department, along with contractors. I care about you and I want your family to feel safe when you go to work, free from sexual assaults, coercion, and illegal property deals that are all related to organized criminal

6

elements in the area. . . . Thank you for getting the restraining order I asked for. . . . I only kept everything public in the last three years to protect my life while designing new diagrams and products. . . .

Sincerely,

Alan McDowell

Ex. 7. Mr. McDowell also promised in the letter to cease publicly speaking about the city.

The apology letter was also entered into evidence at trial.

On June 6, the district court entered a five-year antiharassment protection order against Mr. McDowell. Amongst other provisions, the order restrained him from

committing any acts of harassment against [Ms. Armstrong]; from harassing, following, keeping under physical or electronic surveillance; from using telephonic, audio-visual, or other electronic means to monitor the actions, location, or communication of [Ms. Armstrong,] including but not limited to acts of harassment directed to [third] parties (fellow employees, relatives, or friends) who knew [Ms. Armstrong] when such acts were referencing or otherwise apply to, or include, [Ms. Armstrong].

Ex. 9 at 2.

Mr. McDowell continued to make frequent posts on Facebook after entry of the antiharassment protection order. His posts often concerned alleged corruption in the police department and city, the East Central Community Center, and pharmaceutical companies. Most of his social media posts were rambling and nonsensical. Ms. Armstrong estimated that almost 100 of these posts violated the antiharassment protection

order. For example, in one post Mr. McDowell accused Ms. Armstrong of threatening his life by putting a hit out on him. In others, he accused her of sexually harassing and assaulting him at work. Similarly, in some posts Mr. McDowell intimated that Ms. Armstrong was someone nicknamed "Floozy" or "Flouzy" who isolated and sexually harassed others, and in others he alleged she had been accused of working as a "prostitute." 1 RP (Mar. 1, 2021) at 70, 87, 117-18; *see also* Ex. 10. In other widely shared social media posts, Mr. McDowell referenced Ms. Armstrong's home in Post Falls and that he was not allowed to contact her family members; and he lobbied the police department in Post Falls to conduct an investigation to help him identify Ms. Armstrong's family members. These posts concerned Ms. Armstrong because she had recently moved to Post Falls. Mr. McDowell occasionally referred to Mr. Law in these social media posts.

Mr. McDowell frequently shared his posts to public Facebook pages, including pages of local news organizations, news personalities, and local politicians. Coworkers and others often read these social media posts and brought them to Ms. Armstrong's attention out of concern for her. These posts embarrassed Ms. Armstrong and made her fear for her professional reputation and safety. Ms. Armstrong became increasingly alarmed as Mr. McDowell's accusations took on an increasingly sexual tone. As a result of Mr. McDowell's posts, Ms. Armstrong developed anxiety and sleeping problems.

Mr. McDowell was arrested on December 13, 2018. The State initially charged

Mr. McDowell with one count of harassment, three counts of stalking, and three counts of

violation of a stalking and harassment protection order. After Mr. McDowell waived his

right to a jury trial, the State amended the information to reduce his charges to one count

of stalking and one count of violation of a civil antiharassment protection order. The final

amended information provided as follows:

> COUNT I:   STALKING, committed as follows: That the defendant,
> ALAN R. MCDOWELL, on or about between August 3, 2018 and
> November 30, 2018, in the State of Washington, being in violation of
> any protective order protecting KATHLEEN ARMSTRONG from being
> stalked, did, without lawful authority, intentionally and repeatedly harass
> or repeatedly follow KATHLEEN ARMSTRONG and said KATHLEEN
> ARMSTRONG was placed in fear that said defendant intended to injure
> her or another person or her property or the property of another person, said
> feeling of fear being the same as one that a reasonable person in the same
> situation would experience under all the circumstances, and the defendant
> intended to frighten, intimidate, and harass KATHLEEN ARMSTRONG,
> and/or the defendant knew or reasonably should have known that
> KATHLEEN ARMSTRONG was afraid, intimidated, or harassed, even if
> the defendant did not intend to place her in fear or intimidate or harass her,
>
> COUNT II:  VIOLATION OF CIVIL ANTIHARASSMENT
> PROTECTION ORDER, committed as follows: That the defendant, ALAN
> R. MCDOWELL, in the State of Washington, being eighteen years of age
> or older, on or about between August 3, 2018 and November 30, 2018, did
> willfully violate a Civil Antiharassment Protection Order issued by the
> District Court on June 6, 2018, pursuant to RCW 10.14.

Clerk's Papers at 440.

9

Mr. McDowell's case proceeded to a bench trial. The State in its case-in-chief presented the testimony of only one witness, Ms. Armstrong, and introduced numerous exhibits during her testimony. Mr. McDowell testified on his own behalf and did not call any other witnesses. The court found Mr. McDowell guilty of both pending charges over Mr. McDowell's free speech objections. The court ruled Mr. McDowell had engaged in a course of conduct intended to frighten and intimidate Ms. Armstrong. As such, the court found Mr. McDowell's conduct was not constitutionally protected. Mr. McDowell now appeals.

## ANALYSIS

Mr. McDowell makes several assignments of error on appeal, but they all boil down to a claim that he was improperly convicted of conduct that amounted to constitutionally-protected free speech. *See* U.S. CONST. amend. I; WASH. CONST. art. I, § 5. The State argues Mr. McDowell's behavior constituted a course of conduct with the intent to harass Ms. Armstrong, and therefore did not implicate protected speech. We agree with the State.

We have previously upheld the facial validity of Washington's stalking statute, RCW 9A.46.110, against a free speech challenge. *State v. Thanh Pham Nguyen*, 10 Wn. App. 2d 797, 811-14, 450 P.3d 630 (2019), *review denied*, 195 Wn.2d 1012, 460 P.3d 178

(2020). As we previously explained, "a violation of the stalking statute is not based on the content of pure speech." *Id*. at 811. Instead, the statute prohibits conduct that may incidentally be perpetrated through speech. *Id*. The federal courts have employed similar reasoning in upholding the federal stalking statute, 18 U.S.C. § 2261A. *United States v. Gonzalez*, 905 F.3d 165, 192 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 2727 (2019) ("[S]peech integral to engaging in criminal conduct does not warrant First Amendment protection."); *United States v. Osinger*, 753 F.3d 939, 944 (9th Cir. 2014) ("[B]ecause 18 U.S.C. § 2261A proscribes harassing and intimidating conduct, the statute is not facially invalid under the First Amendment.").

Mr. McDowell does not bring a facial challenge to our stalking statute. Instead, he argues the State failed to present sufficient evidence at trial to show that his particular activities constituted illegal conduct, as opposed to protected speech. When reviewing a conviction for evidentiary sufficiency, we ask whether, viewing the evidence in the light most favorable to the State, any rational fact finder could have found the defendant guilty beyond a reasonable doubt. *State v. Garcia*, 179 Wn.2d 828, 836, 318 P.3d 266 (2014).

Mr. McDowell focuses his argument on the speech consisting of his generalized Facebook posts, not communications made directly to Ms. Armstrong. He claims this speech distinguishes his case from *Thanh Pham Nguyen*, where the defendant violated

11

an antiharassment protection order by repeatedly and directly contacting the victim. According to Mr. McDowell, his Facebook posts consisted of constitutionally-protected speech on matters of public concern. Thus, it is Mr. McDowell's position that he cannot be held criminally liable.

We disagree with Mr. McDowell's claim that a harasser's speech must be made directly to a victim in order to be considered criminal conduct. The core components of the crime of stalking are (1) malicious intent by the defendant, and (2) substantial harm to the victim. *Thanh Pham Nguyen*, 10 Wn. App. 2d at 807. It is these two components that transform what might be considered speech into criminal conduct. *See Gonzalez*, 905 F.3d at 194 ("[I]t is the intent with which the defendants' engaged in this conduct, and the effect this conduct had on the victims, that makes what the defendants did a criminal violation."). The two core components of the stalking statute can be satisfied without any direct contact between the defendant and the victim. *See id*. at 193-94 (upholding stalking conviction based in part on contact with third parties and generalized Internet posts); *Osinger*, 753 F.3d at 945 (upholding stalking conviction based on Internet posts directed to the victim's coworkers and friends). Thus, so long as the core elements of the stalking offense are satisfied, the defendant is protected from being penalized for engaging in pure speech.

12

Viewing the evidence in the light most favorable to the State, the facts at trial satisfied the components of the stalking statute. According to the State's presentation of evidence, Mr. McDowell was engaged in an effort to intentionally harass and disparage Ms. Armstrong through a course of conduct that spanned several years. Mr. McDowell began by making direct contact with Ms. Armstrong. After Ms. Armstrong made clear she did not want contact, Mr. McDowell began attempting contact with Ms. Armstrong through third parties, including her father. Once served with a restraining order, Mr. McDowell resorted to making harassing statements over the Internet through Facebook. Mr. McDowell knew from his history with Ms. Armstrong that his disparaging social media posts would be shared with Ms. Armstrong and cause her fear and distress. A reasonable fact finder could conclude that Mr. McDowell's posts were made maliciously, with the intent to further his ongoing effort to harass Ms. Armstrong. The facts further allow a finding that Mr. McDowell's goal was accomplished, in that his Facebook posts caused Ms. Armstrong significant fear and distress. Mr. McDowell's activities constituted speech as conduct, sufficient to meet the elements of the stalking statute and the prohibition on stalking set forth in the antiharassment protection order.

Mr. McDowell was not held criminally responsible for exercising his right to free speech. Sufficient evidence justifies his convictions and his various assignments of error on review must fail.

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, J.
Pennell, J.

WE CONCUR:

_____, C.J.　　_____, J.
Siddoway, C.J.　　　　　　　　　　Lawrence-Berrey, J.